ROBERT BISHOP *et al.*, Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Fifth District   No. 5—91—0487

Opinion filed October 16, 1992.

Val C. Simhauser, of Simhauser Law Office, of Springfield, for petitioners.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of Chicago, of counsel), for respondent Pollution Control Board.

Phelps, Kasten, Verticchio & Ruyle, of Gillespie, for other respondents.

JUSTICE CHAPMAN delivered the opinion of the court:
Robert and Arminda Bishop were granted site-location-suitability approval for a regional pollution-control facility by the Montgomery

County Board of Supervisors (County). The Illinois Pollution Control Board reversed this decision. The Bishops appeal. We reverse.

The Bishops own property in Montgomery County which had been used for a sanitary landfill during the 1980's. They planned to reopen a new facility at that location and were granted siting approval by the County. The new expanded facility was to operate on approximately 37 acres and would be considered a new regional pollution-control facility under section 3.32 of the Illinois Environmental Protection Act (Act) (Ill. Rev. Stat. 1991, ch. 111½, par. 1003.32). The facility would be located in rural Montgomery County and would serve Montgomery County and the surrounding area.

■ On appeal before the Illinois Pollution Control Board (Board) the petitioners argued that the county lacked jurisdiction to consider the Bishops' application because the notice requirements of section 39.2(b) of the Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1039.2(b)) had not been met. Under section 39.2(b):

> "No later than 14 days prior to a request for location approval the applicant shall cause written notice of such request to be served either in person or by registered mail, return receipt requested, on the owners of all property within the subject area not solely owned by the applicant, and on the owner of all property within 250 feet in each direction of the lot line of the subject property, *said owners being such persons or entities which appear from the authentic tax records* of the County in which such facility is to be located ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 111½, par. 1039.2(b).)

The statute requires that applicants for location approval use the "authentic tax records" to determine the owners to whom notice shall be sent. The question confronted by the Board was, what are "authentic tax records"?

The Bishops insist that authentic tax records are those records that must be maintained by the county treasurer, which show the names and addresses of the recipients of the most recent real estate tax bills. Petitioners contend that the authentic tax records are those maintained by the county clerk. The petitioners argued that the notice requirements were not met because the Bishops notified those persons listed as taxpayers in the county treasurer's tax collector's book for the 1988 tax year tax obligation. The Illinois Pollution Control Board found that the notice requirements were not met and held that the county lacked jurisdiction to hear the Bishops' application for landfill siting.

More than 14 days prior to the request for siting approval, the Bishops served notice of the application upon all adjacent property owners with the exception of Marvin and Shirley Savage. The Savages reside in rural Montgomery County and own property north of the proposed landfill. The Savages had purchased the property from Shirley Savage's parents, Anthony and Anna Leitschuh, on February 28, 1989, and the deed was recorded the same day. It is undisputed that in May 1989, Anthony Leitschuh received notice via certified mail of the Bishops' intent to file the application for landfill siting approval. Shirley Savage testified that her father, Anthony Leitschuh, advised her of the notice in August 1989, and that she and her husband attended the public hearing before the county board of supervisors.

During the hearing before the Illinois Pollution Control Board, several witnesses explained the tax cycle in Montgomery County.

Linda Bolton, a 16-year employee with the supervisor of assessments, testified that in Montgomery County the county clerk's office also serves as the recorder of deeds. Once a month the county clerk's office in its capacity as recorder of deeds sends the declarations of property transfer it receives to the supervisor of assessments' office. Bolton testified that there are three cycles involved in the maintenance and processing of tax records in Montgomery County. Cycle one concerns the assessment of real estate by the supervisor of assessments. Cycle one begins with the county clerk sending the declarations of property transfer to the supervisor of assessments. The supervisor of assessments assists in valuation and compiles information which is logged into a computer system and manually entered in bound volumes. Cycle two, which concerns the county clerk's office, involves the extension of taxes based on levies by the various units of government that levy property tax. Cycle three involves the county treasurer's office, which actually generates and mails the tax bills and collects the taxes.

After the declarations of property transfer are received by the supervisor of assessments' office, it prepares a property-transfer record card which indicates who the previous owner was and where the tax bills should be sent. Property-transfer record-card information is then used to update the tax records in the assessor's computer system. Bolton testified that if a person wanted the most current information regarding the ownership of a parcel of property, she would advise him or her to first check with the county clerk's office in its capacity as the recorder of deeds because that is where the recording of information is first available. For instance, with regard to the parcel at issue

in this case, the county clerk's office recorded the deed transferring the Leitschuh property to Marvin and Shirley Savage on February 28, 1989. Information regarding the change in ownership was documented by the assessor's office on a property-transfer record card on March 16, 1989, and was logged into the assessor's computer system May 24, 1989. Thus, it was not until May 24, 1989, that the supervisor of assessments' computer system showed Marvin Savage as the owner.

Linda Bolton also testified that the supervisor of assessments' office is the only office with authority to make name and address changes as to the tax records on file with the treasurer's office and the county clerk's office. Bolton testified that each fall the assessor's office closes its books, marking the end of cycle one. Once cycle one is complete, cycle two begins in the county clerk's office. Not until cycle one is complete can the supervisor of assessments make changes to the names and addresses on file with the county clerk's office. Bolton explained that all of the changes made with the county clerk's office during cycle two will be transferred to the treasurer's office with cycle three. Not until cycle two is complete can the supervisor of assessments make changes to the names and addresses on file with the treasurer's office.

Bolton testified that she completed a property-transfer record card in the supervisor of assessments' office for the Leitschuh/Savage property on March 16, 1989. That card was admitted into evidence. It indicates that it is a "Property Transfer Record" and that the property in the name of "Anthony Leitschuh" is changed to "Marvin Savage" for the tax year 1989 payable in 1990. The property-transfer record card is a document which is kept in the supervisor of assessments' office because the supervisor of assessments is responsible for keeping current the names and addresses of the person responsible for paying the tax bills. Bolton testified that the supervisor of assessments' office is the only office that has the opportunity to also enter the computer systems of the treasurer's office and the county clerk's office to update the names and addresses of taxpayers.

The Montgomery County clerk and recorder of deeds, Clinton Kimbro, testified that in his capacity as recorder of deeds he maintains a tract index which shows the ownership of property within a given geographic area. Grantors and grantees are recorded in the tract index, which refers to the deeds themselves where more detailed information as to property owners and their addresses can be obtained.

Montgomery County treasurer, Ron Jenkins, testified that his office maintains collector's books, which are a listing of every taxpayer in the county who owns a parcel of property. They include a record of the tax bill that is generated and mailed by the treasurer's office. The collector's books are the source the treasurer's office uses if a person wants to know the recipient of a tax bill. Jenkins testified that the collector's books for the 1988 taxes billed and payable in 1989 show that the tax bill on the parcel at bar was sent to Anthony Leitschuh. The collector's books showing taxes for 1989 payable in 1990 were not available in the treasurer's office on May 7, 1990, as they were not yet compiled. Thus, the taxpayer for the parcel at issue indicated in the collector's books on May 7, 1990, was Anthony Leitschuh. Jenkins explained that if there was a change in the taxpayer's name and address after the collector's books for 1988 taxes payable in 1989 were made, the treasurer's office would have to check with the supervisor of assessments to ascertain the change. Therefore, on May 7, 1990, the treasurer's office would not know whether Anthony Leitschuh was the current taxpayer designated to receive the tax bill for taxes payable in 1990 without checking with the supervisor of assessments.

Jenkins testified that the supervisor of assessments provides his office with information regarding name and address changes. When a name and address change is necessary, either the supervisor of assessments sends the treasurer a certificate of error and the treasurer makes the name and address change himself, or Linda Bolton from the supervisor of assessments' office comes to the treasurer's office and makes the changes.

Petitioners argue, and it is apparent from the testimony given at the hearing before the Illinois Pollution Control Board, that on May 7, 1990, the supervisor of assessments' records showed Marvin and Shirley Savage as landowners of the property at issue, while the county treasurer's collector's books for the 1988 tax year payable in 1989 showed Leitschuh as the landowner that day. On May 7, 1990, had the Bishops inquired of either the supervisor of assessments' office or the county clerk's office, current information as to the landowners and the designated taxpayer for taxes payable in 1990 could have been obtained. Petitioners contend that while the notice requirements of section 39.2(b) were not intended to burden siting applicants with completing a title search to identify the true owners of adjacent property, it was not the intent of the legislature to limit an applicant's search to a prior year's tax collector's books without making any inquiry of personnel of the offices involved in maintaining the authentic

tax records. Petitioners argue that mere inquiry with personnel at the treasurer's office may have caused the applicant to seek further information from the supervisor of assessments or the county clerk concerning the name of property owners.

The Bishops claim that they checked with the county treasurer's office on May 7, 1990, to determine the names and addresses of the landowners for purposes of meeting the notice requirements of section 39.2(b). Attached to the Bishops' application for siting approval is a list entitled "Property Owners Adjacent to Robert Bishop Property." Mr. Leitschuh is included on that list; the Savages are not. Petitioners point out that no evidence was presented to verify that the Bishops made inquiry of the treasurer's office in order to obtain the list of landowners on May 7, 1990. In fact, Treasurer Jenkins testified that neither he nor anyone from his office prepared the list presented by the Bishops. This point supports the petitioners' theory that the Bishops made no inquiry of the personnel at the treasurer's office. We note, however, that the list of property owners presented by the Bishops lists the same information regarding landowners as Treasurer Jenkins testified would have been available on that date had personal inquiry of the treasurer's office been made.

Many of the cases interpreting the notice provision of section 39.2(b) concern the statutory requirement of the number of days in which notice must be given. For instance, *Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, 484 N.E.2d 898, concerned the interpretation of the notice requirements of section 40 of the Environmental Protection Act, which requires the Board to give 21 days' notice to interested persons prior to a hearing on the permit. In that case the Illinois Power Company alleged that the decision of the Board was void because the Board failed to give the requisite statutory notice of its hearing regarding Illinois Power Company's power plant permit. The Board argued that although it did not meet the technical notice requirements, since notice was given only five days prior to the hearing, Illinois Power suffered no prejudice by the failure to give notice. The court held that the statutory notice requirement of the Act was a jurisdictional point, and the Board's decision was void because the statutory notice requirement was not met.

> "[A]n administrative authority derives its power solely from the statute by which it was created [citation]. ***
>
> The State agency and, in this instance, the Pollution Control Board cannot ignore the mandatory requirements of notice in an effort to evade the responsibility to complete a hearing

within the required time ***." 137 Ill. App. 3d at 452, 484 N.E.2d at 900.

*Illinois Power* was relied on in *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 487 N.E.2d 743. In *Kane* the Elgin Sanitary District served timely notice on the necessary property owners under section 39.2(b). However, it was not until one day before it filed a request for location approval that it caused written notice of the request to be published in the newspaper. This act contravened the statute which required newspaper publication no later than 14 days prior to a request for location approval. Furthermore, the notice in the newspaper stated that the site-approval request would be submitted to the county board "within 14 days," rather than announcing the exact date it would be filed as required by the statute.

The *Kane* court, relying on *Illinois Power Co. v. Pollution Control Board,* stated that the notice requirements of section 39.2(b) are jurisdictional prerequisites which must be followed in order to vest the county board with the power to hear a landfill proposal. Because the Elgin Sanitary District failed to comply with the 14-day notice requirement and further failed to publish the date when the request for site approval would be submitted, the court found that the county board lacked jurisdiction and vacated the decision of the board.

The holding that the statutory notice requirements of section 39.2(b) are jurisdictional prerequisites which must be strictly followed was carried forth in *Concerned Boone Citizens, Inc. v. M.I.G. Investments, Inc.* (1986), 144 Ill. App. 3d 334, 494 N.E.2d 180, and in *Browning-Ferris Industries of Illinois, Inc. v. Pollution Control Board* (1987), 162 Ill. App. 3d 801, 516 N.E.2d 804. In *Concerned Boone Citizens* the court held that because M.I.G. Investments filed its application 13 days after it published notice of its application, M.I.G. Investments' application was defective and the county board lacked jurisdiction to act on it. In *Browning-Ferris* the court affirmed the county's denial of request for site approval of a landfill where the approval occurred 13 days after published notice of such request, instead of 14 days as required by statute.

Petitioners cite *Illinois Power, Kane, Concerned Boone Citizens,* and *Browning-Ferris* as authority for the proposition that the notice requirements of section 39.2(b) are jurisdictional prerequisites which must be followed. In this case, however, the determination of whether the statutory prerequisites were met is not as clear as it is in cases involving the number of days in notice requirements. The issue here is what are or may be "authentic tax records."

Petitioners cite DiMaggio v. Solid Waste Agency of Northern Cook County (Jan. 11, 1990), PCB No. 89—138, as authority for holding that the "authentic tax records" are those records held by the county clerk. DiMaggio is an opinion of the Illinois Pollution Control Board which concerned an interpretation of the notice requirements of section 39.2(b). The Illinois Pollution Control Board pointed out that the county clerk's office maintains the county records as required by statute. (See Ill. Rev. Stat. 1991, ch. 34, par. 3—2012.) In that case the clerk of Cook County testified that the county clerk's office maintains the authentic tax records of the county. The Pollution Control Board held that while section 39.2(b) does not require searches of records from the treasurer's and assessor's offices, the authentic tax records are held by the county clerk. DiMaggio at _____.

In the case at bar the county clerk did not testify that the county clerk's office maintains the authentic tax records. In fact, Linda Bolton testified that the records from each of the three cycles involved in maintaining and processing Montgomery County's tax records are included as part of the county's authentic tax records. She further testified that to determine current ownership of property the most up-to-date information would be available in the county clerk's office. We do not agree with the petitioners that DiMaggio is conclusive authority that the county clerk's records are *the* "authentic tax records" for purposes of section 39.2(b). All three offices play a role in the collection and record-keeping functions of the taxing process. (See, for example, functions of the county clerk (Ill. Rev. Stat. 1991, ch. 120, pars. 513, 639), the assessor (Ill. Rev. Stat. 1991, ch. 120, pars. 483.01, 576a), and the treasurer (Ill. Rev. Stat. 1991, ch. 120, pars. 657, 671).) While on a given date the treasurer's collector's books may not be the most current records available in the tax cycle, they are authentic tax records.

In *Daubs Landfill, Inc. v. Pollution Control Board* (1988), 166 Ill. App. 3d 778, 520 N.E.2d 977, the sole question presented was whether a defect in the legal description of the proposed landfill location invalidated an otherwise accurate narrative description of the property in the notice which was mailed to adjoining landowners and published in the local newspaper. The court held that the narrative description provided adequate notice and did not divest the county board of jurisdiction because the statutory provision which required that the notice state "the location of the proposed site" did not specifically require a legal description. Just as the court in *Daubs* examined the language of the statute to determine whether the legal description given was sufficient to comply with the notice requirements of section

39.2(b), in this case we will examine the language of the statute to determine what "authentic tax records" are.

■■ ■ Section 39.2(b) does not define owners as those persons or entities appearing from the county clerk's records. Nor does section 39.2(b) define owners as those available from the most up-to-date record of ownership. "Authentic tax records" is the term used in the statute. "Authentic" is defined as:

> "Genuine; true; real; pure; reliable; trustworthy; having the character and authority of an original; duly vested with all necessary formalities and legally attested. Competent, credible, and reliable as evidence." (Black's Law Dictionary 121 (5th ed. 1979).)

Words used in a statute are to be given their plain and commonly understood meaning in the absence of an indication of legislative intent to the contrary. (*In re Petition to Annex Certain Territory to the Village of North Barrington* (1991), 144 Ill. 2d 353, 362, 579 N.E.2d 880, 884.) We cannot read section 39.2(b) as requiring more of the applicant than is statutorily mandated. Generally, as long as notice is in compliance with the statute and places those potentially interested persons on inquiry, it is sufficient to confer jurisdiction on the county board. (*Wabash & Lawrence Counties Taxpayers & Water Drinkers Association v. Pollution Control Board* (1990), 198 Ill. App. 3d 388, 555 N.E.2d 1081.) We find that the authentic tax records in this case included the records maintained by the treasurer's office and that service on Anthony Leitschuh was proper.

In view of the foregoing, we reverse the decision of the Illinois Pollution Control Board.

Reversed.

WELCH and W.A. LEWIS, JJ., concur.