# Illinois Official Reports

## Appellate Court

---

### *Scott v. City of Chicago*, 2015 IL App (1st) 140570

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL SCOTT, JAMES DES JARDINS, MARK GRAHAM, and LORRAINE PETTIGREW, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee (Lake Park Associates, Inc., Intervenor-Defendant-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-0570 |
| Filed | March 13, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-19928; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert T. O'Donnell and Adam M. Kingsley, both of O'Donnell Law Firm, Ltd., of Libertyville, for appellants.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.<br><br>Thomas F. Geselbracht, Jesse W. Dodson, and Eric M. Roberts, all of DLA Piper LLP, of Chicago, for appellee Lake Park Associates, Inc. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion |
|---|---|
| | Presiding Justice Palmer concurred in the judgment and opinion. |
| | Justice Gordon specially concurred, with opinion. |

**OPINION**

¶ 1    Chicagoans Michael Scott, James Des Jardins, and Mark Graham, who own residential properties on South Kenwood Avenue, and their neighbor, Lorraine Pettigrew, who owns residential property on South Kimbark Avenue, brought an action against the City of Chicago to challenge the city council's decision to rezone property on 53rd Street between Kenwood and Kimbark Avenues from retail zoning to a planned development pursuant to the Chicago Zoning Ordinance. Chicago Municipal Code § 17-13-100 *et seq*. Where there was once just a parking lot and gas station on the north side of 53rd Street, the new zoning would allow for a mixed use building that is 13 stories and 155 feet tall. The construction plans include 267 multifamily residential units, ground-floor commercial space, and 218 parking spaces. The plaintiffs alleged that the previous split zoning for the property was B1-2 and B3-2, which allowed for mixed use construction no taller than 50 feet, like the neighboring buildings on 53rd Street, which are at most 3 stories tall. Thus, city council's rezoning to B3-5 and then to Planned Development No. 1218 would allow "over-sized" and "out-of-character" buildings in the "low scale" neighborhood," which would tower over the neighboring structures, blocking their access to sunlight and casting "significant" shadows. The plaintiffs also complained there was inadequate provision for off-street parking, which would result in the use and deprivation of scarce on-street parking. The plaintiffs asked the court to declare the rezoning invalid because the changes to their neighborhood would unjustifiably diminish property values and were arbitrary and capricious, in violation of the plaintiffs' constitutional right to substantive due process. The owner of the rezoned property, Lake Park Associates, Inc. (Lake Park), is affiliated with the University of Chicago. Lake Park intervened in the action and sought dismissal pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2012)) (Civil Code), arguing that the complaint was defective because the plaintiffs had not complied with the notice requirements set out in section 11-13-8 of the Illinois Municipal Code (65 ILCS 5/11-13-8 (West 2012)) (Municipal Code), which mandate that a party challenging a zoning ordinance give written notice of the party's lawsuit to all property owners within 250 feet of the affected property. Lake Park also joined in a motion to dismiss filed by City of Chicago pursuant to section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2012)), contending the complaint did not state a cause of action for a due process violation. The trial court granted Lake Park's motion to dismiss for failure to give presuit notice and did not reach the other motion. The plaintiffs appeal. For the reasons that follow, we affirm.

¶ 2    Section 11-13-8 of the Municipal Code requires the plaintiffs to provide presuit notice of their intent to file a declaratory judgment action seeking to have the new zoning classification declared invalid. 65 ILCS 5/11-13-8 (West 2012). Section 11-13-8 provides as follows:

"In municipalities of 500,000 or more population [(*e.g.*, Chicago)], when any zoning ordinance, rule or regulation is sought to be declared invalid by means of a declaratory judgment proceeding, not more than 30 days before filing suit for a declaratory judgment the person filing such suit shall serve written notice in the form and manner and to all property owners as is required of applicants for variation in Section 11-13-7, and shall furnish to the clerk of the court in which the declaratory judgment suit is filed, and at the time of filing such suit, the list of property owners, the written certificate and such other information as is required in Section 11-13-7 to be furnished to the board of appeals by an applicant for variation. A property owner entitled to notice who shows that his property will be substantially affected by the outcome of the declaratory judgment proceeding may enter his appearance in the proceeding, and if he does so he shall have the rights of a party. The property owner shall not, however, need to prove any specific, special, or unique damages to himself or his property or any adverse effect upon his property from the declaratory judgment proceeding." 65 ILCS 5/11-13-8 (West 2012).

¶ 3 Thus, section 11-13-8 incorporates the notice requirements set out in section 11-13-7 of the Municipal Code:

"[I]n municipalities of 500,000 or more population, an applicant for variation or special use shall, not more than 30 days before filing an application for variation or special use with the board of appeals, serve written notice, either in person or by registered mail, return receipt requested, on the owners, as recorded in the office of the recorder of deeds or the registrar of titles of the county in which the property is located and as appears from the authentic tax records of such county, of all property within 250 feet in each direction of the location for which the variation or special use is requested; provided, the number of feet occupied by all public roads, streets, alleys and other public ways shall be excluded in computing the 250 feet requirement. *** If, after a bona fide effort to determine [the] address [of] the owner of the property on which the notice is served cannot be found at his or her last known address, or the mailed notice is returned because the owner cannot be found at the last known address, the notice requirements of this sub-section shall be deemed satisfied." 65 ILCS 5/11-13-7 (West 2012).

¶ 4 The plaintiffs mailed approximately 125 prefiling notices, but did not attempt to send notice to at least 26 other property owners whose land is within 250 feet of Lake Park's rezoned property, excluding public roads, streets, and alleys. The plaintiffs did not send notices to the owners of properties that are on the east side of Dorchester Avenue, of which there are 7, and they made no attempt to notify owners of any tax exempt properties, of which there are 19.

¶ 5 When the plaintiffs filed suit, they were statutorily required to also file a list of all property owners given notice of the intent to sue. See 65 ILCS 5/11-13-7, 11-13-8 (West 2012). The plaintiffs' list included the Chicago 14-digit "Property Index Number" or PIN for each parcel followed by either the owner's name and mailing address or simply the word "exempt."

¶ 6 The plaintiffs had compiled their list with the assistance of a Chicago firm, Property Insight, L.L.C. According to this firm, when it conducts searches for presuit notices, the "subject property is identified and provided to us by our customers." In this instance, the

plaintiffs' attorney requested a search of all properties "within 250 feet of 1330 E. 53rd Street." Accordingly, the search originated with the PIN for that specific street address and extended outward, 250 feet in each direction from the boundaries of that PIN, excluding public roads, streets, and alleys. The problem with using one common street address as the basis for the record search in this instance is that the subject property consists of three different parcels, and, thus, there are three different addressees and PINs. Therefore, the search did not extend far enough east, to Dorchester Avenue. The other 19 omissions occurred because the search was performed only on the computerized records of the Cook County treasurer. When a Cook County property is exempt from taxation, the treasurer's records do not list the name and mailing address of the record owner. (Thus, for some properties on the plaintiffs' mailing list, the word "exempt" appeared instead of the owner's name and mailing address.) The plaintiffs' search analyst neglected to search the records of the two other agencies involved in recording and collecting property taxes in this county–the Cook County clerk and the Cook County assessor.

¶ 7 Lake Park argued in its motion and then amended motion to dismiss that either type of omission (the omission of the Dorchester Avenue property owners and the omission of the tax exempt property owners) was sufficient grounds for dismissal, because notice is a mandatory prerequisite to bringing suit. After full briefing and oral argument, the trial court pointed out that there was a third defect in the plaintiffs' property search, in that there was no indication that they searched the records of the Cook County recorder of deeds. Section 11-13-7 requires that written notice be given to property owners "as recorded in the office of the recorder of deeds *** *and* as appears from the authentic tax records of such county." (Emphasis added.) 65 ILCS 5/11-13-7 (West 2012). The court granted the dismissal with prejudice and this appeal was taken.

¶ 8 The plaintiffs contend that the dismissal of their complaint for failure to comply with the notice requirement has been an undue and unnecessary sanction which the appellate court should reject. Previously, in *City Suites*, this court found that "the language and mandate" of sections 11-13-7 and 11-3-8 of the Municipal Code are "clear in requiring that [presuit] notice be given in all declaratory actions to invalidate zoning, without exception." *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790, 758 N.E.2d 382, 390 (2001); 65 ILCS 5/11-13-7, 11-13-8 (West 2012). The plaintiffs contend that *City Suites* is distinguishable. They also contend that sections 11-13-7 and 11-13-8 of the Municipal Code do not require "perfect identification of all property owners" entitled to notice and that the appropriate standard is for plaintiffs to either make a *bona fide* effort or achieve substantial compliance with the statutes.

¶ 9 The phrase "*bona fide*" appears in the final sentence of section 11-13-7 (the statute is quoted above). The plaintiffs excuse their failure to notify the 19 tax exempt properties by arguing they made a *bona fide* effort at compliance by retaining a firm (Property Insight, L.L.C.) that specializes in identifying properties within 250 feet of a given location and that the firm then made a *bona fide* effort to locate all the record owners of the properties within the notice zone. Regarding the failure to contact anyone on the east side of Dorchester Avenue, the plaintiffs contend they justifiably limited their property search to the single PIN for 1330 East 53rd Street because the municipality and Lake Park have consistently identified the rezoned property by this single common address, such as when Lake Park's predecessor-in-interest prepared the application for amendment to the Chicago Zoning

- 4 -

Ordinance and when the City of Chicago prepared the ordinance. The plaintiffs calculate that their notices actually encompassed two of the three PINs that were rezoned and "came up [just] two feet short" in determining the notice zone for the third PIN, which they contend is further indication of their *bona fide* effort at compliance. The plaintiffs propose that, "at a minimum," we allow the suit to proceed with respect to the two PINs where they "achieved full compliance."

¶ 10   The plaintiffs' "substantial compliance" argument is based on authority indicating that a mandatory statute does not always require strict compliance and that substantial compliance may suffice, provided that (1) the purpose of the statute can be met without strict compliance and (2) the "defendant [has not] suffered any prejudice from [the] plaintiff's failure to strictly comply." *Behl v. Gingerich*, 396 Ill. App. 3d 1078, 1086, 920 N.E.2d 665, 671 (2009). According to the plaintiffs, the municipality and Lake Park have the "most at stake" in upholding the planned development and are committing "substantial resources" in defense of the city council's decision to rezone, which means that "the practical need for any other property owner to intervene in the litigation is negligible, if not zero."

¶ 11   A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other matters that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70, 778 N.E.2d 1153, 1160 (2002). Municipal ordinances, such as the zoning ordinance at issue here, are interpreted under the general rules of statutory construction and interpretation. *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 22, 958 N.E.2d 1065; *Puss N Boots, Inc. v. Mayor's License Comm'n*, 232 Ill. App. 3d 984, 986, 597 N.E.2d 650, 652 (1992).We address questions of statutory interpretation and rulings on section 2-619 motions *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461, 939 N.E.2d 487, 490 (2010) (regarding statutory interpretation); *Krilich*, 334 Ill. App. 3d at 569-70, 778 N.E.2d at 1160 (regarding section 2-619). Our task is to ascertain and give effect to the intent of the legislature. *JPMorgan*, 238 Ill. 2d at 461, 939 N.E.2d at 490. We do this by considering the plain language of the statute, and when it is clear and unambiguous, we apply it as written without resorting to other rules of statutory construction. *JPMorgan*, 238 Ill. 2d at 461, 939 N.E.2d at 490. We do not read in exceptions, conditions, or limitations that were not expressed by the legislature. *Martin v. Office of the State's Attorney*, 2011 IL App (1st) 102718, ¶ 10, 959 N.E.2d 1264. We give each word, clause, and sentence reasonable meaning and, to the extent possible, we do not render any statutory language superfluous. *Gallaher v. Hasbrouk*, 2013 IL App (1st) 122969, ¶ 31, 3 N.E.3d 913.

¶ 12   Applying these principles to the facts at hand, we find that the municipal statutes are not satisfied by the plaintiffs' efforts at presuit notice. We reach this conclusion in part because the plaintiffs' search of the "authentic tax records" in order to give notice to other property owners was incomplete and we are not persuaded that the legislature condoned less than strict compliance with the notice statutes. Precedent indicates that searching the county's "authentic tax records" in order to give presuit notice includes searching not only the records of the Cook County treasurer, but also the records of the Cook County clerk and the Cook County assessor. *Bishop v. Pollution Control Board*, 235 Ill. App. 3d 925, 932, 601 N.E.2d 310, 315 (1992). All three offices play a role in the record keeping and collection of taxes. *Bishop*, 235 Ill. App. 3d at 932, 601 N.E.2d at 315. Although this precedent concerned notice given in Montgomery County rather than Cook County, the decision was based on Illinois

statutes that apply here as well. See *Bishop*, 235 Ill. App. 3d at 932, 601 N.E.2d at 315. The trial court expressly relied on this precedent in granting Lake Park's motion to dismiss and the court's order uses similar wording. Nonetheless, on appeal the plaintiffs do not attempt to distinguish *Bishop* or cite contrary authority and they do not dispute the fact that they made no attempt to search the records of the county clerk or the county assessor in order to compile their presuit mailing list.

¶ 13    The plaintiffs misconstrue the statute when they argue section 11-13-7 recognizes "that compliance with the statute may be difficult" and, thus, "a *bona fide* effort to comply with the statute may be sufficient." These are terms proposed by the plaintiffs. These are not the words of the legislature. What the legislature said was that when a plaintiff makes a *bona fide* attempt to serve a property owner "at his or her last known address," but the owner "cannot be found" at that address or when "the mailed notice is returned because the owner cannot be found" at that address, then "the notice requirements of this sub-section shall be deemed satisfied." 65 ILCS 5/11-13-7 (West 2012). That limited provision might apply when notice is addressed and mailed to a property owner who has relocated without updating his or her current mailing information and thus cannot be found at the expected location. That limited provision does not apply here and it does not excuse the plaintiffs' failure to serve the owners of tax exempt properties.

¶ 14    Moreover, we are not persuaded that their failure to send notice to the Dorchester Avenue owners is insignificant or attributable to City of Chicago or Lake Park. The plaintiffs erred by using only the common address, 1330 East 53rd Street, as the basis for their search of nearby properties, excluding the Dorchester Avenue properties. They cannot blame their inadequate search parameters on the municipality or Lake Park. The legislature did not use the term "common address" or the term "common street address" in section 11-13-7 to define the plaintiffs' notice obligation. Instead, section 11-13-7 specifies that notice is to be given to the owners of properties "within 250 feet in each direction of the *location* for which the variation or special use is requested." (Emphasis added.) 65 ILCS 5/11-13-7 (West 2012). The statute also gives a second indication that the use of a common address is insufficient in this context. The statute requires that notices include both "(i) the common street address or addresses *and* (ii) the property index number ('PIN') or numbers of all the parcels of real property contained in the area for which the variation or special use is requested." (Emphasis added.) 65 ILCS 5/11-13-7 (West 2012). In other words, the use of the term "location" coupled with the fact that the plaintiffs are required to set out (1) the "common street address *or addresses*" and (2) the "property index number (PIN) *or numbers*" for the property that has been rezoned confirms that the legislature intended for the 250-foot notice parameter to be measured with more care than from just a common address.

¶ 15    Furthermore, in the municipal zoning context, a common address alone is not sufficient identification of a property. The Chicago Zoning Ordinance defines zoning boundaries in terms of streets, alleys, boundary lines, and property lines instead of by common addresses. Chicago Zoning Ordinance § 17-1-0800 (2012). See also Chicago Zoning Ordinance § 17-1-0602 (2012) (stating that "[t]he language of the Zoning Ordinance must be read literally" and "[r]egulations are no more or less strict than stated"). Consistent with that standard, the ordinance language that was adopted by the city council in this instance describes the boundaries of the subject property in terms of streets and alleys:

"[The ordinance amends] Title 17 of the Chicago Municipal Code by changing all of the B1-2 Neighborhood Shopping District symbols and B3-2 Community Shopping District symbols as shown on Map Number 12-D in the area generally bounded by: the alley next north of and parallel to East 53rd Street; a line extending south beginning at a point 53 feet west of South Kenwood Avenue and ending at a point 101.8 feet west of South Kenwood Avenue; East 53rd Street; and a line beginning at a point 422.72 feet west of South Kenwood Avenue extending north to the alley next north of and parallel to East 53rd Street, to those of a B3-5 Community Shopping District. Section 2 Title 17 of the Municipal Code of Chicago, the Chicago Zoning Ordinance, is hereby amended by changing all of the B3-5 Community Shopping District symbols as shown on Map Number 12-D in the area described in Section 1 of this ordinance to the designation of a Planned Development, subject to the use and bulk regulations set forth in the Plan of Development attached hereto and made a part thereof."

(This language can be found in the ordinance pamphlet printed and distributed by the city clerk on June 5, 2013.) The city council's records not only recite the boundaries of the subject property for zoning purposes, but also include an "Existing Land-Use Map" that graphically depicts the subject property and its neighboring parcels which are specified to be in use as residential, commercial/office, institutional, parking garage, or surface parking. Following that there is a "Planned Development Boundary and Property Line Map" which graphically depicts the precise measurements of the boundaries of the area being rezoned and the square footage of the rezoned area. In addition to these specific descriptions and depictions, the city council's materials include the common address that the plaintiffs claim to have relied on when conducting their 250-foot boundary search.

¶ 16    There are similar details in the application for rezoning which the plaintiffs contend was another reason they were justified in limiting their property search to the single PIN for 1330 East 53rd Street.

¶ 17    For these reasons, we find (1) that the point for determining the properties to be given presuit notice was the "location" of the subject property to be rezoned, not its common address or addresses, and (2) that the plaintiffs' use of the common address, 1330 East 53rd Street, as the basis for their search cannot be attributed to the municipality or the owner of the rezoned property. The plaintiffs did not follow the Municipal Code. The plaintiffs' search parameters were wrong, through no fault of the other litigants.

¶ 18    Moreover, the suggestion that we should let the suit go forward for two of the three rezoned PINs because the plaintiffs "achieved full compliance" with the notice statute for those PINs is contrary to the record and the plainly worded statute requiring notice "within 250 feet in each direction of the [rezoned] *location*." (Emphasis added.) 65 ILCS 5/11-13-7 (West 2012).

¶ 19    Our next consideration is whether "substantial compliance" with the presuit notice requirements is acceptable in this instance. Both of the municipal statutes use the word "shall" in defining the plaintiffs' presuit obligations. See 65 ILCS 5/11-13-8 (West 2012) ("not more than 30 days before filing suit for a declaratory judgment the person filing such suit *shall* serve written notice in the form and manner and to all property owners as is required of applicants for variation in Section 11-13-7" (emphasis added)); 65 ILCS 5/11-13-8 (West 2012) (an applicant for variation *shall*, "not more than 30 days before filing

- 7 -

*** serve written notice"). "Typically, use of the word 'shall' in a statutory provision indicates that the legislature intended a mandatory, rather than a directory, provision." *Behl*, 396 Ill. App. 3d at 1086, 920 N.E.2d at 671; *Puss N Boots*, 232 Ill. App. 3d at 986-87, 597 N.E.2d at 652-53 (stating that the use of "shall" generally indicates a legislative intent to make a provision or a law mandatory). The plaintiffs cite *Behl* for the proposition that, in some instances, "shall" in a mandatory statute means only "substantial compliance."

¶ 20    As we outlined earlier, when determining whether substantial compliance or strict compliance is expected, we are to take a two-step analysis. *Behl*, 396 Ill. App. 3d at 1086, 920 N.E.2d at 671. First, we are to consider whether the purpose of the statute is achieved without strict compliance. *Behl*, 396 Ill. App. 3d at 1086, 920 N.E.2d at 671. Second, we are to determine "whether defendant suffered any prejudice from plaintiff's failure to strictly comply." *Behl*, 396 Ill. App. 3d at 1086, 920 N.E.2d at 671. The plaintiffs cannot pass the first step. The purpose of a statute is found by looking at the statutory language and giving those words their plain and ordinary meaning. *Behl*, 396 Ill. App. 3d at 1087, 920 N.E.2d at 671; *JPMorgan*, 238 Ill. 2d at 461, 939 N.E.2d at 490 (stating the general principle of statutory construction that the plain language of the statute, when it is clear and unambiguous, is applied as written). It is clear from this particular statutory language that the legislature intended for all property owners within 250 feet of the location at issue to be notified of a challenge to the zoning ordinance. The statute itself explains the reason for this requirement–a property owner entitled to notice may appear in the suit with all the rights of a party. 65 ILCS 5/11-13-8 (West 2012). Thus, every property owner that is potentially interested in taking part in the litigation must be made aware of the suit's existence. Even the plaintiffs here concede that "the purpose of the pre-filing notice required for would-be zoning challengers is to alert neighbors to their challenge and to allow neighboring owners the ability to defend the zoning classification if they so desire." To that we add that some neighboring owners may indeed want to intervene to defend the zoning classification while others will want to assist the plaintiff in defeating it. Accordingly, unless all nearby property owners are given notice, the purpose of the statute cannot be achieved.

¶ 21    Furthermore, the plaintiffs disregarded a significant number of relevant owners when they mailed notices to approximately 125 property owners and ignored at least 26 others. Plaintiffs contrast their efforts to send *some* notices with the fact that *no* notices were sent in two other cases interpreting sections 11-13-7 and 11-13-8 of the Municipal Code. 65 ILCS 5/11-13-7, 11-13-8 (West 2012). In *City Suites*, neighboring property owners challenged the rezoning of residential property into an off-site parking lot for a hotel, but the trial court dismissed their complaint. *City Suites*, 325 Ill. App. 3d 780, 758 N.E.2d 382. Although the plaintiffs' failure to give presuit notice was just one of many issues on appeal, the appellate court found that plaintiffs must comply with the presuit notice requirement, "without exception." *City Suites*, 325 Ill. App. 3d 780, 758 N.E.2d 382. This case was subsequently cited with approval in *Figiel*, where the property at issue was a corner of a public park that was rezoned to allow for the construction of a children's museum and a field house. *Figiel v. Chicago Plan Comm'n*, 408 Ill. App. 3d 223, 945 N.E.2d 71 (2011). The *Figiel* plaintiffs tried to excuse their failure to give presuit notice to the fact that their amended complaint was not styled as a "declaratory judgment" action and that instead of asking the court to " 'declare' " the zoning amendment to be unconstitutional, the pleading asked the court to " 'enter a finding' " that the rezoning was " 'arbitrary, capricious, unconstitutional,

unreasonable and without justification in law or in fact.' " *Figiel*, 408 Ill. App. 3d at 227, 945 N.E.2d at 75. They hoped to avoid the scope of section 11-13-8 of the Municipal Code, which stated, "when any zoning ordinance *** is sought to be declared invalid by means of a declaratory judgment proceeding, [the plaintiffs shall give notice] not more than 30 days before filing suit." 65 ILCS 5/11-13-8 (West 2008). Nevertheless, the trial and appellate courts determined the claim was properly characterized as a declaratory judgment action and was governed by the presuit notice requirement. *Figiel*, 408 Ill. App. 3d 223, 945 N.E.2d 71. The distinction the current plaintiffs draw between themselves and the plaintiffs in *City Suites* and *Figiel* is not persuasive. The property owners who were not sent notice have been deprived of what the legislature intended–notice of the suit and opportunity to show that their property "will be substantially affected by the outcome of the declaratory judgment proceeding" (whether they oppose or support the rezoning) and that they should be allowed to appear and participate in the proceeding with the "rights of a party." 65 ILCS 5/11-13-8 (West 2012). The rights of these other property owners who were entitled to notice have been prejudiced by the plaintiffs' insufficient efforts to provide presuit notice.

¶ 22    After the appellate briefs were filed, we granted the plaintiffs' motion for leave to cite additional authority. The plaintiffs contend *Andrews* indicates that a statute requiring notice to a set of property owners can be met by substantial, rather than strict, compliance with the terms of the statute. *Andrews v. County of Madison*, 54 Ill. App. 3d 343, 369 N.E.2d 532 (1977).

¶ 23    The plaintiffs fail to explain how the operative facts in *Andrews* are analogous to this case. There is no similarity. The controversy in *Andrews* was whether adequate notice had been given of a public hearing in 1976 at which citizens could voice their opinions on whether Madison County should install sanitary sewers to serve more than 7,000 registered voters and improve portions of three different townships. *Andrews*, 54 Ill. App. 3d at 355, 369 N.E.2d at 541. The proposed project was not only massive, it was costly, and would require the issuance of $5 million in general obligation bonds. *Andrews*, 54 Ill. App. 3d at 346, 369 N.E.2d at 535. Many people at the public hearing expressed support for the project while many others objected. *Andrews*, 54 Ill. App. 3d at 346, 369 N.E.2d at 535.The most frequent objection was to the additional tax levy. *Andrews*, 54 Ill. App. 3d at 346, 369 N.E.2d at 535. After the public hearing, members of the Madison County board voted to approve the project and to levy additional taxes to pay for its construction and maintenance. *Andrews*, 54 Ill. App. 3d at 346, 369 N.E.2d at 535.

¶ 24    The appellate court characterized the public hearing as an *in rem* taxation proceeding and remarked on the well-settled proposition that taxation does not require personal notification to satisfy due process. *Andrews*, 54 Ill. App. 3d at 356, 369 N.E.2d at 542. Instead, publication notice alone may be sufficient to satisfy due process concerns in the context of *in rem* taxation. *Andrews*, 54 Ill. App. 3d at 356, 369 N.E.2d at 542.

¶ 25    Pursuant to the statute at issue there, Madison County officials had published notice of the hearing in a local newspaper. *Andrews*, 54 Ill. App. 3d at 346, 369 N.E.2d at 535. The editors of the various local newspapers also printed numerous articles about the proposed sewer project. *Andrews*, 54 Ill. App. 3d at 356, 369 N.E.2d at 542. In addition, the statute required Madison County to mail individual notices to property owners of record, which the county officials had done. *Andrews*, 54 Ill. App. 3d at 346, 369 N.E.2d at 535. However, a subsequent search showed that the county's mailing list was incomplete and a group of

property owners sought to enjoin the project and the resulting tax burden in part because of the deficient mailing. *Andrews*, 54 Ill. App. 3d at 355, 369 N.E.2d at 542.

¶ 26    The appellate court found, however, that the notice required by statute and actually given by county officials was "much more thorough" than the due process standard for *in rem* taxation. *Andrews*, 54 Ill. App. 3d at 356, 369 N.E.2d at 542. The court was confident that, in combination, the published notice and published stories meant that "substantially all affected persons were aware of this opportunity to be heard in objection to the [proposed sewer project and tax increase]." *Andrews*, 54 Ill. App. 3d at 357, 369 N.E.2d at 542. Therefore, although the county's efforts were imperfect, the notice given "was sufficient to pass due process muster." *Andrews*, 54 Ill. App. 3d at 356, 369 N.E.2d at 542.

¶ 27    We are not reviewing a tax case and thus *Andrews'* analysis and the taxation precedent that was so helpful in that case is not applicable here. Furthermore, the circumstances that occurred in *Andrews* were not repeated here. Mailing was the only method of presuit notice utilized by the current plaintiffs, rather than the combination of public notice, media coverage, and individual letters which publicized the Madison County board meeting. It was the combination of the published notice and the "numerous news articles about the project" which led the *Andrews* court to find that "substantially all affected persons were aware of this opportunity to be heard." *Andrews*, 54 Ill. App. 3d at 357, 369 N.E.2d at 542. Plaintiffs do not suggest that they published notice in a local newspaper of their intent to file this suit. Moreover, the media coverage that occurred, if any occurred, when a private property owner sought approval to demolish a Chicago gas station and parking lot to make way for one large, mixed-use building was undoubtedly less than the extensive news coverage that occurred while Madison County officials were contemplating digging up the streets and increasing property taxes for 6,920 property owners. The plaintiffs' reliance on *Andrews* is not persuasive.

¶ 28    The plaintiffs emphasize that none of the Chicago property owners who were notified by mail chose to intervene in this proceeding and the plaintiffs suggest this lack of participation is a practical indication that substantial compliance with the notice requirement was sufficient. We disagree. There is no way to determine whether the excluded property owners would have decided to participate in the suit if they had known about it.

¶ 29    We also reject the contention that the plaintiffs are excused from strict compliance with the notice requirement because The City of Chicago and Lake Park will vigorously defend the rezoning. If the legislature intended that the municipality and the owner of the subject property were the only truly interested defendants, then the legislature would have written the notice provision accordingly. The degree of opposition to the plaintiffs' suit by the municipality and the property owner has no bearing on this statute. We cannot disregard any of the legislature's wording. *Gallaher*, 2013 IL App (1st) 122969, ¶ 31, 3 N.E.3d 913.

¶ 30    For these reasons, we find that strict compliance with the presuit notice provision is required and that this is not an instance when substantial compliance is adequate.

¶ 31    Finally, the plaintiffs have not addressed the additional notice requirement the trial court pointed out had been overlooked by all the litigants. Section 11-13-7 requires that written notice be given to property owners "as recorded in the office of the recorder of deeds *** *and* as appears from the authentic tax records of such county." (Emphasis added.) 65 ILCS 5/11-13-7 (West 2012). This is a clear and unambiguous requirement that all plaintiffs inquire with *both* the office of the recorder of deeds and the authentic tax records of the

county. The recorded deeds ordinarily should be searched so that plaintiffs capture the names and addresses of new property owners who are not yet included in the county tax rolls. Regardless of why the legislature imposed this requirement, it is undisputed that the current plaintiffs made no attempt to search the records of the recorder of deeds. The total failure to comply with this notice requirement is reason alone to find that the plaintiffs' suit was defective. Furthermore, the failure to address this fact on appeal is a concession that the trial judge's ruling was correct.

¶ 32 In short, the record shows that the plaintiffs made multiple errors as they tried to comply with the presuit notice requirement and that their failures cannot be excused or attributed to the actions of the City of Chicago or Lake Park. The plaintiffs' failure to strictly comply with the presuit notice requirement warranted the dismissal of their complaint with prejudice.

¶ 33 In their reply brief and during oral arguments, the plaintiffs contended their "sincere but imperfect efforts" to provide presuit notice should not result in the "ultimate penalty" of the dismissal of their suit. They cite *Hanna v. City of Chicago*, 331 Ill. App. 3d 295, 308-10, 771 N.E.2d 2d 13, 24-25 (2002), for the proposition that Illinois courts are lenient with notice failures and allow for "make-up notice." We reject this argument for any one of the following three reasons.

¶ 34 First, the plaintiffs fail to cite any portion of the record that indicates they presented this argument in the trial court and are now seeking our review of the judge's ruling. Arguments presented for the first time on appeal are waived. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 344, 775 N.E.2d 987, 998-99 (2002) (issues not raised in the circuit court cannot be raised for the first time on appeal).

¶ 35 Second, this argument was not presented in the plaintiffs' opening brief. Arguments which are omitted from an opening brief are waived. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued in an appellant's opening brief "are waived and shall not be raised [for the first time] in the reply brief, in oral argument, or on petition for rehearing").

¶ 36 Third, *Hanna* is distinguishable on the facts and the opinion does not suggest in any way that the notice requirement should be relaxed. That case involved the rezoning of an entire 40-block neighborhood. *Hanna*, 331 Ill. App. 3d at 302, 771 N.E.2d at 19. The plaintiff challenged the rezoning of his own property, unlike the current plaintiffs who challenged the rezoning of a nearby property. The plaintiff's presuit notice was apparently perfect as to all property owners within 250 feet of his own property. *Hanna*, 331 Ill. App. 3d at 302, 771 N.E.2d at 19. However, in a case of first impression, we determined that he would be required to also give notice to all property owners within 250 feet of the rezoned neighborhood, despite his contention that this was a burden that could not have been intended by the legislature. *Hanna*, 331 Ill. App. 3d at 310, 771 N.E.2d at 25. In contrast, here, we have plaintiffs who failed to attempt to notify numerous property owners who were plainly entitled to notice because they were within 250 feet of the affected property. *Hanna* does not excuse their noncompliance with the statute at issue. The opinion does not state or imply that plaintiffs may be lax in giving presuit notice and that Illinois courts will be "lenient" in enforcing the notice standard. The plaintiffs' failure to strictly comply with the plainly worded notice requirement is fatal to their lawsuit concerning the Lake Park development.

¶ 37 Lake Park also sought dismissal of the complaint pursuant to section 2-619(a)(1) of the Civil Code, contending that the failure to strictly comply with the statute deprived the circuit court of subject matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2012). This argument was

incorrect. It was based on an election board case which has limited application and expressly states, "Illinois courts do not have inherent authority to hear *election cases*, but may only exercise jurisdiction over such cases when provided for by statute." (Emphasis added.) *Hough v. Will County Board of Elections*, 338 Ill. App. 3d 1092, 1093-94, 789 N.E.2d 795, 796 (2003). In *Belleville Toyota*, our supreme court provided an in-depth analysis of subject matter jurisdiction in Illinois. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335, 770 N.E.2d 177, 184 (2002).

¶ 38    Finally, the City of Chicago filed a separate brief in support of the trial court's ruling and argues, as an alternative ground for affirmance, that the plaintiffs did not adequately plead a due process claim. The City of Chicago contends the plaintiffs did not allege injury to any protectable interest, in that there is no legal right to the free flow of light or air from adjoining land, no entitlement to street parking, and no guarantee of increasing property values. The City of Chicago also contends the plaintiffs' facial challenge to the rezoning did not state a claim because the decision withstands a rational basis review. The trial court did not reach these arguments, but a reviewing court may uphold the decision of the trial court on any grounds which are supported by the record. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192, 874 N.E.2d 1, 14-15 (2007). However, we find it unnecessary to reach these additional arguments because of our conclusions above that the complaint was properly dismissed based on the plaintiffs' failure to strictly comply with the presuit notice requirements.

¶ 39    The dismissal of the plaintiffs' lawsuit is affirmed.

¶ 40    Affirmed.

¶ 41    JUSTICE GORDON, specially concurring.

¶ 42    I am specially concurring in this case only because I have something to add to the well-written opinion of the majority concerning legislative intent. In the rezoning world, the developer of a property is required by statute or ordinance to notify all property owners normally within 250 feet of the subject property of the rezoning request. The intent of the legislature or city council is to make sure that every property owner within a certain distance of the subject property that is to be rezoned has an opportunity to be heard at a public hearing so that the municipality can hear how the rezoning is going to affect the rights of its citizens in close proximity of property that is subject to a rezoning application. After the property is rezoned, or after the rezoning request is denied, the grieving party is required in Chicago to give the same type of notice to all property owners within 250 feet of the subject property "not more than 30 days before filing suit for a declaratory judgment" to invalidate the rezoning or to overturn the city's decision to deny the rezoning. 65 ILCS 5/11-13-8 (West 2012). For decades, developers have had to resend notices whenever any property owner within a required area was not served on rezoning applications as the courts have interpreted the statute or ordinance to be mandatory. *Figiel v. Chicago Plan Comm'n*, 408 Ill. App. 3d 223, 229-30 (2011). In 1961, section 11-13-8 of the Municipal Code was enacted with basically the same language requiring a notice before instituting a declaratory judgment proceeding in the courts whenever developers or property owners seek to overturn the decision of the City of Chicago. Whoever files the suit, whether it be the developer or the property owner, the language requires all property owners within 250 feet of the subject

property to be given a written notice. It cannot be relaxed for the developer and it cannot be relaxed for the property owner because the legislature has intended for it to be mandatory so that those property owners most affected will be given appropriate notice so that they can be heard. Anything less could cut off the rights of those people who are the most vocal about the rezoning of the subject property.