2022 IL App (1st) 210492

No. 1-21-0492

Second Division
December 20, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| MATTHEW KENNEDY, VINCENT SAISI, INC., RIZA MILOVIC, and VICTOR ZISMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | No. 18 CH 11693 |
| v. | ) ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Honorable Eve M. Reilly |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

**OPINION**

¶ 1    This appeal arises from a putative class action lawsuit filed by plaintiff-appellants Matthew Kennedy, Vincent Saisi, Inc., Riza Milovic, and Victor Zisman (collectively, "plaintiffs") on behalf of themselves and others found liable for red light violations under the City of Chicago's automated red light camera program. Plaintiffs' argument—which they maintain on appeal—was

that the notices of violation (NOVs) sent by the City were void *ab initio* because they did not contain certain information required by the Chicago Municipal Code (Municipal Code). The Cook County circuit court ultimately granted the City's motion to dismiss, finding that the NOVs substantially complied with the Municipal Code. Plaintiffs now appeal that dismissal, and we affirm for the following reasons.

¶ 2                                    I. BACKGROUND

¶ 3     The red light camera statute of the Illinois Vehicle Code (625 ILCS 5/11-208.6(m) (West 2014)) authorizes municipalities in Cook County to enforce red light violations via an automated camera system. In July 2003, the City of Chicago established its red light camera program by enacting an ordinance in the Municipal Code. Chicago Municipal Code § 9-102-020(a) (added July 9, 2003). Pursuant to the ordinance, the City has installed cameras at various intersections to automatically record images of vehicles that enter the intersection against a red light. The City then sends the registered owners of such vehicles an NOV that includes a copy of the image(s) captured by the camera and instructions on how to pay or contest the violation.

¶ 4     In the case at bar, plaintiffs collectively received several NOVs for violations occurring in the years 2015 to 2018. Plaintiff Kennedy received two NOVs for violations occurring in May 2018, both of which he unsuccessfully contested at separate administrative hearings. He did not seek administrative review in the circuit court and has since paid one of the violations. Plaintiff Milovic unsuccessfully challenged one of his NOVs via mail. He later paid the violation without seeking administrative review. All other relevant NOVs sent to plaintiffs were paid without contest.

¶ 5     On September 17, 2018, plaintiffs filed their putative class action complaint seeking, among other relief, a declaratory judgment that the City's NOVs were void *ab initio* for failing to

comply with the requirements set forth in section 9-100-045(a) of the Municipal Code (Chicago Municipal Code § 9-100-045(a) (amended Oct. 28, 2015)).

¶ 6     As pertinent here, section 9-100-045(a) states that an NOV "shall include all applicable information required in Sections 11-208.3, 11-208.6 and 11-208.8 of the Illinois Vehicle Code." *Id.* In turn, those sections of the Vehicle Code list numerous things an NOV "shall" include. Of particular relevance to this appeal is section 11-208.6 of the Vehicle Code, which provides:

"The notice shall include:

(1) the name and address of the registered owner of the vehicle;

(2) the registration number of the motor vehicle involved in the violation;

(3) the violation charged;

(4) the location where the violation occurred;

(5) the date and time of the violation;

(6) a copy of the recorded images;

(7) the amount of the civil penalty imposed and the requirements of any traffic education program imposed and the date by which the civil penalty should be paid and the traffic education program should be completed;

(8) a statement that recorded images are evidence of a violation of a red light signal;

(9) a warning that failure to pay the civil penalty, to complete a required traffic education program, or to contest liability in a timely manner is an admission of liability ***;

(10) a statement that the person may elect to proceed by:

> (A) paying the fine, completing a required traffic education program, or both; or
>
> (B) challenging the charge in court, by mail, or by administrative hearing; and
>
> (11) a website address, accessible through the Internet, where the person may view the recorded images of the violation." 625 ILCS 5/11-208.6(d) (West 2014).

¶ 7 The record on appeal contains a redacted copy of one of the NOVs received by plaintiffs, which the parties agree is representative of the NOVs received by all plaintiffs. The front of the NOV clearly lists the vehicle information; the type of violation; the date, time, and location of the violation; photographs of the violation; a web address where the recipient can view additional photographs or video of the violation; the amount due and date by which it is due; and a statement that the violation can be contested either by mail or at an in-person hearing. Thus, there is no dispute that the NOV satisfies subsections (d)(1)-(7) and (d)(10)-(11) of section 11-208. See *id.* § 11-208.6(d)(1)-(7), (10)-(11). Plaintiffs' contention, however, is that the NOV lacks the information required by subsections (d)(8) and (d)(9), namely "a statement that recorded images are evidence of a violation" and "a warning that failure to pay the civil penalty *** or to contest liability in a timely manner is an admission of liability and may result in a suspension of the driving privileges of the registered owner of the vehicle," respectively. See *id.* § 11-208.6(d)(8), (9).

¶ 8 Although the NOV does not use that exact verbiage, it does contain several statements regarding a recipient's failure to respond. Specifically, the NOV warns, "[D]o not ignore this notice. If you fail to respond, the City of Chicago will conclude that this billing is correct and take further enforcement action." The NOV also states, "If you fail to pay or contest this violation a

determination will be entered against you. If the fine is not paid within 25 days of a determination, a penalty will be assessed in an amount up to the fine amount and the determination will be final." Finally, the NOV cautions that "[f]ailure to timely pay *** may subject you to further enforcement including vehicle immobilization." Unlike section 11-208.6 of the Vehicle Code, however, the NOV does not contain the word "evidence" or the phrase "admission of liability."

¶ 9 The City filed a motion to dismiss plaintiffs' complaint on several grounds. Broadly speaking, the City first asserted that plaintiffs' claims were barred by the doctrine of *res judicata* and that the circuit court lacked subject-matter jurisdiction because plaintiffs did not exhaust their administrative remedies before filing suit. Second, the City contended that plaintiffs lacked standing because they did not claim to be prejudiced by the allegedly deficient NOVs. Third, the City argued that the NOVs complied with the Vehicle and Municipal Codes and that, in any event, the Code provisions in question were merely directory, rather than mandatory.

¶ 10 The circuit court entered an order directing plaintiffs to first file a response limited to the issues of jurisdiction, *res judicata*, and standing. In their response, plaintiffs maintained that they were not required to raise their voidness challenge in an administrative hearing because it was not one of the limited defenses available under the Municipal Code. Plaintiffs also maintained that they had standing to bring their claims by virtue of the economic injury they sustained in paying their violations.

¶ 11 After a hearing on the motion, the circuit court determined that plaintiffs' claims were not barred by *res judicata* or a lack of subject-matter jurisdiction. Noting that the NOVs are primarily challenged by ordinary people with no legal training, the court reasoned that it would be unfair to expect such a person challenging a red light violation to raise an unconsiderable argument in an administrative proceeding simply as a "placemaker" to preserve it for further review. The City's

motion was therefore denied with respect to those matters, and the court ordered additional briefing on the remaining issues.

¶ 12    On April 5, 2021, after additional briefing and argument, the circuit court entered a written order granting the City's motion to dismiss. In its order, the court first analyzed the language of the Municipal Code and determined that the use of the word "shall" suggested that the allegedly missing information was mandatory, rather than directory. However, the court went on to find that the City substantially complied with the Municipal Code and that the substantial compliance was sufficient because (1) the NOVs fulfilled the general notification purposes of the provisions in question and (2) plaintiffs had not alleged, much less established, that they were prejudiced by the City's lack of strict compliance.

¶ 13    This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15                            A. Standard of Review

¶ 16    On appeal, plaintiffs contend that the circuit court erred in granting the City's motion to dismiss, which was brought as a combined motion under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). The standard of review for a section 2-619.1 motion is *de novo*, meaning that we perform the same analysis as a trial judge would. *Zander v. Carlson*, 2020 IL 125691, ¶ 18. We may affirm the court's judgment on any basis found in the record, regardless of the court's reasoning. *Wells v. State Farm Fire & Casualty Co.*, 2020 IL App (1st) 190631, ¶ 28.

¶ 17                        B. Exhaustion of Administrative Remedies

¶ 18    The parties each raise several interrelated arguments that were presented below. We first address the threshold issue of whether plaintiffs' suit is barred in the first instance by their failure to exhaust administrative remedies.

¶ 19    To that end, we begin our analysis by observing that section 9-100-60(b) of the Municipal Code (Chicago Municipal Code § 9-100-060(b) (amended May 6, 2015)) expressly limits the bases upon which a person may challenge a red light violation in an administrative hearing to the following: (1) "the operator of the vehicle was issued a Uniform Traffic Citation for a violation of Section 9-8-020(c);" (2) "the operator of the vehicle passed through the intersection when the light was red either to yield the right-of-way to an emergency vehicle or as part of a funeral procession;" (3) "the facts alleged in the violation notice are inconsistent or do not support a finding that Section 9-8-020(c) was violated;" (4) "the vehicle was leased to another and the lessor has provided the name and address of the lessee in compliance with Section 9-100-140(c);" (5) "the vehicle was an authorized emergency vehicle;" and (6) "the respondent was not the registered owner or lessee of the cited vehicle at the time of the violation."

¶ 20    Plaintiffs contend that their challenge is not included in this list and that, consequently, they were not required to raise it at an administrative hearing where it could not be considered. The City disagrees, asserting that plaintiffs' argument falls under the third defense listed above, *i.e.*, that the facts alleged by the deficient NOVs do not support a finding that a red light was violated.

¶ 21    The City's position misperceives the nature of plaintiffs' claim, as plaintiffs do not contend that the "facts alleged" by the NOVs are insufficient evidence of a violation. Nor could plaintiffs realistically do so, as the NOVs include photographic evidence of their vehicles running red lights. Indeed, none of the plaintiffs in this case dispute that they committed a violation. Rather, they

maintain that the City did not have the authority to punish them for those violations without first explicitly informing them that "[t]hese recorded images are evidence of a violation" and that their failure to respond would result in "an admission of liability." Thus, plaintiffs' challenge is not one of the enumerated defenses authorized by the Municipal Code.

¶ 22    Alternatively, the City also argues that the doctrine of exhaustion of administrative remedies nevertheless required plaintiffs to raise their claims in administrative hearings regardless of whether their defense could have been considered.

¶ 23    Generally, a party cannot seek to challenge an action of an administrative agency without first exhausting all administrative remedies available to it. *Burns v. Department of Insurance*, 2013 IL App (1st) 122449, ¶ 12. The rationale behind this rule is that it "allows the administrative agency to fully develop and consider the cause before it, use its expertise to resolve matters, correct its own errors, and conserve judicial time by avoiding unnecessary or piecemeal appeals." *Id.* However, the doctrine of exhaustion of administrative remedies is not absolute. For instance, in *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 47, this court identified three exceptions that allow a party to seek judicial review without first exhausting administrative remedies: (1) where no issues of fact are presented, (2) where agency expertise is not involved, and (3) where the agency's jurisdiction is attacked as not being authorized by statute.

¶ 24    *Maschek* bears many similarities to this case. There, the plaintiff received an NOV after an automated camera recorded his vehicle speeding through a school zone in June 2014. *Id.* ¶ 1. The plaintiff paid the violation without contesting it at an administrative hearing. *Id.* ¶ 3. Nevertheless, he later filed a putative class action complaint in the circuit court challenging the City's authority to issue the NOV on the basis that the relevant statute allowed the City to operate speed cameras

only on "school days." *Id.* ¶ 13. The circuit court granted the City's motion to dismiss, and the defendant appealed. *Id.* ¶ 24.

¶ 25     On appeal, we rejected the City's argument that the plaintiff's claim was barred for failure to exhaust his administrative remedies. *Id.* ¶ 46. We found that all three of the previously mentioned exceptions to the exhaustion doctrine applied because:

> "First, no issues of fact are presented, since [the] plaintiff does not contest that he was speeding. Second, the agency's expertise is not involved, since this case does not require a resolution of whether [the] plaintiff did or did not violate the law. Third, [the] plaintiff attacks the City's jurisdiction or authority to issue the ticket, claiming that it was not authorized by statute." *Id.* ¶ 47.

¶ 26     In an attempt to distinguish *Maschek*, the City argues that the third exception does not apply here because the City's authority to operate red light cameras is not in dispute. Even accepting this argument, however, the other two exceptions discussed in *Maschek* remain applicable. Like in *Maschek*, plaintiffs do not contest that they committed red light violations, so the present case does not involve any issues of fact or implicate agency expertise. Thus, under *Maschek*, we find plaintiffs' claim is not barred for their failure to pursue an administrative remedy.

¶ 27                    C. Whether the Municipal Code is Mandatory or Directory

¶ 28     Having so decided, we now turn to whether the relevant ordinances are mandatory or discretionary.

¶ 29     The seminal case on this issue is *People v. Robinson*, 217 Ill. 2d 43 (2005), where our supreme court sought to clarify the confusion surrounding two similar but distinct legal doctrines: (1) the "mandatory-permissive dichotomy" and (2) the "mandatory-directory dichotomy." *Id.* at

51-52. The mandatory-permissive dichotomy—which is not implicated here—refers to whether a particular function of a governmental official is required or optional. *Id.* In contrast, the mandatory-directory dichotomy—which is at issue here—" 'denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Id.* (quoting *Morris v. County of Marin*, 18 Cal. 3d 901, 908 (1977) (*en banc*)).

¶ 30    Whether an ordinance is mandatory or directory presents a question of law that we review *de novo*. *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 16; see *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142, ¶ 23 (ordinances are construed using the same principles as statutes). In construing an ordinance, our primary objective is to ascertain and effectuate the drafters' intent, the best evidence of which is the language of the ordinance itself. *People v. Geiler*, 2016 IL 119095, ¶ 17.

¶ 31    Examining the language of the Municipal Code, plaintiffs emphasize that section 9-100-045(a) states that an NOV "shall" include the information required under the Vehicle Code. Plaintiffs further point out that section 1-4-100 of the Municipal Code provides that, "[e]xcept as otherwise explicitly provided in this Code, the word 'shall' as used in this Code is mandatory." Chicago Municipal Code § 1-4-100 (amended May 9, 2012). Because the Municipal Code does not explicitly provide otherwise with respect to section 9-100-045(a), plaintiffs contend that these two sections read together establish that the language is mandatory, rather than directory.

¶ 32    Also relying on the word "shall," the circuit court agreed with plaintiffs. However, this analysis does not go far enough. Although "shall" generally indicates a mandatory obligation in the mandatory-permissive dichotomy, the same is not true of the mandatory-directory dichotomy. *Robinson*, 217 Ill. 2d at 54. In *Robinson*, for example, our supreme court explicitly clarified that

"whenever, as in this case, the mandatory-directory dichotomy is at issue the word 'shall' is not determinative." *Id.*; see *In re M.I.*, 2013 IL 113776, ¶ 19 (same).

¶ 33    Additionally, while section 1-4-100 of the Municipal Code does provide that "shall" generally means "mandatory," we find this section ambiguous because it does not specify whether it refers to the mandatory-directory dichotomy or the mandatory-permissive dichotomy. See *Robinson*, 217 Ill. 2d at 51 (the question of whether a statute is mandatory or directory is "easily confused with the separate question [of] whether [the] statutory language is mandatory or permissive"). Adding to the ambiguity is the fact that, in other chapters, the Municipal Code sometimes specifies that "shall" means "mandatory and not merely directory." Chicago Municipal Code §§ 5-20-010, 4-280-030 (amended Apr. 24, 2012). However, no such language appears in the relevant provisions here. It is a fundamental principle of statutory construction that "[w]here the legislature has employed certain language in one part of a statute and different language in another, we may assume different meanings were intended." *Relf v. Shatayeva*, 2013 IL 114925, ¶ 34. Also notable is the fact the Municipal Code never specifies that mandatory means "not merely permissive," arguably because such a provision would be redundant with section 1-4-100. See *People v. Baskerville*, 2012 IL 111056, ¶ 25 (courts should avoid construing a statute in a way that renders any part redundant).

¶ 34    To resolve this ambiguity, we must examine the language of the Municipal Code within the framework set forth in *Robinson*. First, we presume that procedural commands to government officials are directory. *Geiler*, 2016 IL 119095, ¶ 18. This presumption is overcome only if (1) there is negative language in the statute specifying a consequence of noncompliance or (2) the right the provision is designed to protect would be generally injured if the statute were directory. *Lakewood*, 2019 IL 124019, ¶ 29.

¶ 35    Applying the test to this case, it clear that the presumption is not overcome. Neither the Municipal Code nor the portions of the Illinois Vehicle Code referenced therein provide for any negative consequences for the City's failure to comply. It is also evident that the rights of NOV recipients would not be generally injured under a directory construction. To trigger this exception, "it is not enough to show that, in a particular case, a party's rights may be prejudiced; the party must show that prejudice would *generally* occur." (Emphasis in original.) *People v. Shief*, 2016 IL App (1st) 141022, ¶ 34. As the circuit court observed, none of the plaintiffs in this case even allege that *they* were prejudiced by the NOVs, much less that prejudice would generally occur.

¶ 36    The cases cited by plaintiffs do not require a different result. *City of Chicago v. Elevated Properties, L.L.C.*, 361 Ill. App. 3d 824 (2005); *City of Chicago v. Cotton*, 356 Ill. App. 3d 1 (2005); and *Puss N Boots, Inc. v. Mayor's License Comm'n of the City of Chicago*, 232 Ill. App. 3d 984 (1992), all predate *Robinson* and thus do not employ the analytical framework set forth in that case. The one post-*Robinson* case cited by plaintiffs, *Ferguson v. Patton*, 2013 IL 112488, ¶ 1, dealt with the issue of "whether the Inspector General of the City of Chicago may retain private counsel to bring an action in circuit court to compel the City of Chicago's Corporation Counsel to produce unredacted copies of documents sought by the Inspector General as part of an official investigation into municipal corruption." Our supreme court answered that question in the negative, noting that the Municipal Code provided that it was the City's corporation counsel, not the inspector general, who "shall" represent the City's interests in legal matters. *Id.* ¶ 32 (citing Chicago Municipal Code § 2-60-20(a) (amended Sept. 5, 2007)). Thus, *Ferguson* did not involve the mandatory-directory dichotomy and so too did not analyze the issue in accordance with *Robinson*. Consequently, none of these cases are helpful to plaintiffs.

¶ 37    Because section 9-100-045(a) is merely directory, a violation on the part of the City does not automatically invalidate plaintiffs' tickets. Instead, the burden remains on plaintiffs to show that they were prejudiced by any non-compliance. *Round v. Lamb*, 2017 IL 122271, ¶ 16. However, as discussed above, plaintiffs have not alleged or established any prejudice.

¶ 38                                D. Substantial Compliance

¶ 39    Further, even if we were to conclude that the ordinance in question was mandatory, rather than directory, our analysis would not end there. Even mandatory provisions can sometimes be satisfied through substantial, rather than strict, compliance. *Akin v. Smith*, 2013 IL App (1st) 130441, ¶ 9. Determining whether substantial compliance will suffice involves a two-step analysis. *Scott v. City of Chicago*, 2015 IL App (1st) 140570, ¶ 20. First, we consider whether the purpose of the statute in question is achieved without strict compliance. *Id.* If so, we then consider whether the defendant suffered prejudice from the plaintiff's failure to strictly comply. *Id.*

¶ 40    We agree with the circuit court that substantial compliance was sufficient in this case and that the City substantially complied with the Municipal Code. Broadly speaking, the basic purpose of the NOVs is to notify the accused of the existence and nature of the charge and the options for resolving it. In our view, the City's NOVs substantially fulfill this purpose, as they list the vehicle information; the type of violation; the date, time, and place of the violation; and photographic evidence of the violation. The NOVs also include the deadline by which the recipient must either pay the fine or challenge it in court, by mail, or by administrative hearing. Thus, a person receiving an NOV is apprised of all the information necessary to resolve the violation.

¶ 41    Plaintiffs contend, however, that the recipient of an NOV is not fully informed because the NOV does not state that the photograph of the violation may be "evidence of a violation" and that failure to take any action on the violation will result in a "admission of liability." We disagree. In

examining the purpose of the NOV ordinance, we are mindful of the NOV's intended audience—everyday citizens who receive violations. Notwithstanding the overly technical conception of "evidence" urged by plaintiffs, we believe a reasonable recipient of an NOV would expect the included photograph to be used as evidence against him or her either in court or at an administrative hearing. Similarly, although plaintiffs maintain that the phrase "admission of liability" carries some specific legal significance, we find that a reasonable person would sufficiently understand the consequences of ignoring the NOV. First, the NOV informs the recipient that a failure to pay or contest the violation means "a determination will be entered against you" and "may subject you to further enforcement," such as vehicle immobilization or suspension of driving privileges. Thus, recipients are on notice that they will incur negative consequences if they do not respond to the NOV.

¶ 42    Having established that the purpose of the ordinance is fulfilled through substantial compliance, we again turn to prejudice. As previously discussed, plaintiffs concede that they were not prejudiced by any defects in the NOVs. Even if, as plaintiffs submit, prejudice might occur in some hypothetical scenarios, that is insufficient to establish that *they* were prejudiced by the City's lack of strict compliance.

¶ 43    Nor are we persuaded by plaintiffs' argument that substantial compliance is insufficient because the ordinance at issue is "penal in nature." In advancing this position, plaintiffs rely on three cases, each of which is readily distinguishable. In *In re Lance H.*, 2012 IL App (5th) 110244, ¶ 21, *rev'd on other grounds*, 2014 IL 114899, a case involving involuntary admission to a mental health facility, the Fifth District stated that strict compliance with the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2010)) was required in order to

safeguard the liberty interests at stake.[1] In *People v. Ramirez*, 214 Ill. 2d 176, 178 (2005), the defendant was sentenced to 21 years in prison after being convicted *in absentia* of possession of cocaine with intent to deliver. However, our supreme court upheld this court's grant of a new trial because the defendant was not present in court when the trial date was set, the court clerk did not strictly comply with the notice requirements for holding a trial *in absentia*, and there was no evidence that the defendant had received actual notice of the trial. *Id.* at 187. Of course, the case at bar simply does not implicate the liberty interests at stake in *Lance H.* and *Ramirez.* See Chicago Municipal Code § 9-100-020(a) (amended Apr. 21, 2021) (red light camera violation is a "civil offense punishable by fine" with no criminal penalty).

¶ 44    Plaintiffs' final case, *Schultz v. Performance Lighting, Inc.*, 2013 IL App (2d) 120405, is perhaps more analogous but also distinguishable. There, the plaintiff filed a petition to her ex-husband's employer for the withholding of child support from the ex-husband's paychecks. However, the petition did not strictly comply with the Income Withholding for Support Act (750 ILCS 28/1 *et seq.* (West 2010)) in that it did not list the ex-husband's Social Security number or the termination date for the withholdings. *Schultz*, 2013 IL App (2d) 120405, ¶ 12. On appeal, the Second District acknowledged no liberty interest was implicated but nevertheless found the stakes "sufficiently weighty" to require strict compliance where the plaintiff sought to withhold "a significant portion" of her ex-husband's wages and the employer faced "rapidly accumulating penalties" for failure to comply with a valid withholding request. *Id.* ¶ 15. Here, the fine for a red light camera violation is one-time payment of $100. Chicago Municipal Code § 9-100-020(d) (amended Apr. 21, 2021). While not a nominal amount, we cannot say this is "sufficiently

---

[1]In reversing the Fifth District's opinion on other grounds, our supreme court noted that, although strict compliance has been generally required in involuntary admission cases, "[t]he court has not required strict compliance in all instances." *In re Lance H.*, 2014 IL 114899, ¶ 20.

weighty" to require strict compliance under the logic of *Schultz*. Moreover, Illinois courts have employed the doctrine of substantial compliance where harsher penalties are involved. See, *e.g.*, *People v. Wright*, 2017 IL 119561, ¶ 53 (waiver of right to counsel in armed robbery trial); *People v. Fuller*, 205 Ill. 2d 308, 323 (2002) (admonishments before accepting guilty plea in murder case); *People v. Williams*, 2012 IL App (2d) 111157, ¶ 26 (admonishments leading to forfeiture of $50,000 bail bond). Thus, we find substantial compliance sufficient under the facts of this case.

¶ 45                                    III. CONCLUSION

¶ 46    Because the City's substantial compliance was sufficient to effectuate the purpose of the NOV ordinance, and because plaintiffs suffered no prejudice from a lack of strict compliance, the circuit court did not err in dismissing plaintiff's complaint. Accordingly, the circuit court's judgment is affirmed.

¶ 47    Affirmed.

---

*Kennedy v. City of Chicago*, **2022 IL App (1st) 210492**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-11693; the Hon. Eve M. Reilly, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Mark Roth, of Roth Fioretti LLC, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper and Ellen W. McLaughlin, Assistant Corporation Counsel, of counsel), for appellee. |

---