2026 IL App (1st) 241910

No. 1-24-1910

First Division
April 13, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| NEIGHBORS AGAINST A MARIJUANA DISPENSARY AT 2573-81 LINCOLN, INC., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 23 CH 8934 |
| v. | ) | |
| | ) | |
| ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO and MARIGROW, INC., | ) ) ) | Honorable Thaddeus L. Wilson |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellant Neighbors Against a Marijuana Dispensary at 2573-81 Lincoln, Inc. (NAMD), filed a complaint in the circuit court of Cook County, seeking administrative review of a decision issued by defendant-appellee Zoning Board of Appeals of the City of Chicago (the Board), granting a special use permit to defendant-appellee MariGrow, Inc. (MariGrow), to operate a cannabis dispensary at 2573-81 North Lincoln Avenue in Chicago. The circuit court

dismissed NAMD's complaint for administrative review and affirmed the Board's decision. NAMD now appeals from the circuit court's judgment, arguing that (1) the Board denied NAMD due process and equal protection when it denied its request for continuance, (2) the circuit court abused its discretion in denying NAMD leave to amend its complaint, (3) NAMD has standing to seek administrative review of the Board's decision, and (4) the circuit court abused its discretion when it declined to remand this matter to the Board to further develop the record as to NAMD's standing.

¶ 2       For the reasons that follow, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4       The following factual summary is derived from the pleadings and exhibits contained in the record on appeal.

¶ 5       In 2019, MariGrow applied to the Illinois Department of Financial and Professional Regulation for a conditional adult use dispensing organization license. Its application was approved, and MariGrow was eventually awarded a license for the Chicagoland area.

¶ 6       On March 9, 2023, MariGrow filed its special use application with the Board, seeking "to establish an adult use cannabis dispensary at the subject site," *i.e.,* 2573-81 North Lincoln Avenue. That same day, a public notice sign was posted in the window of the subject property, which indicated that MariGrow had applied for a special use permit.

¶ 7       On May 10, 2023, notice of a June 1, 2023, community meeting related to MariGrow's application was published in the *Chicago Sun-Times*. Additionally, counsel for MariGrow averred that, two weeks prior to the meeting, written notice of the community meeting was served via first class mail on all property owners within 250 feet of the property. On May 12, 2023, Alderman Timmy Knudsen issued a newsletter via e-mail to all ward residents that included a notice for the

June 1 community meeting. This same notice for the meeting was included in the May 19 and May 26 newsletters as well. Alderman Knudsen e-mailed a final notice of the meeting to ward residents on June 1.

¶ 8 On June 1, 2023, a community meeting was held, with 180 people in attendance.

¶ 9 On July 12, 2023, NAMD was formed and officially incorporated as an Illinois Not-for-Profit corporation.

¶ 10 At the beginning of August, the Board placed MariGrow's application on the agenda for a hearing on August 18, 2023. According to NAMD's complaint, on August 4, 2023, the City of Chicago uploaded the agenda for that hearing. According to the Board's findings following the August 18 hearing, "[d]ue notice of the hearing was provided under Sections 17-13-0107-A(9) and 17-13-0107-B of the Chicago Zoning Ordinance and by publication in the *Chicago Tribune*."

¶ 11 On August 16, 2023, counsel for NAMD sent a letter to the Board's chairman, Brian Sanchez, stating that NAMD was still waiting for a response to its Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2022)) request and requested that the hearing be continued until October 2023. Neither the FOIA request itself nor a response to counsel's request appears in the record.

¶ 12 The Board's hearing on NAMD's application took place on August 18, 2023, at which the following occurred. Counsel for NAMD orally requested a 60-day continuance, stating that NAMD needed more time to prepare for the hearing. MariGrow's counsel objected to this request, stating that MariGrow had been through a lengthy process, engaged with the community, and had served the proper notices for the hearing. The chairman inquired as to NAMD's reason for its continuance request. Counsel responded that, on the previous day, it had received numerous documents as a result of the FOIA request. When asked when the FOIA request was submitted,

counsel answered, "I believe last week." MariGrow's counsel responded that it had provided more than adequate notice throughout the application process. The chairman also asked NAMD's counsel whether any of the members of NAMD owned property within 250 feet of the subject property. Counsel responded: "I don't have that exact information here at this time." Subsequently, the chairman denied the request.

¶ 13     During the hearing, MariGrow presented several witnesses to support its application. Afterwards, Paul Link, treasurer and director of NAMD, testified to NAMD's objection to MariGrow's application. He stated that the dispensary would negatively impact pedestrian safety because schoolchildren will walk past the property every day and the presence of security indicates an increased risk of crime, like children being "caught in crossfire, just as an example." Link also stated that the dispensary would negatively impact the general welfare of the neighborhood and the community because there would be an increase in marijuana use in the nearby park. The commissioner for the Department of Planning and Development, Sam Toia, asked Link why he believed children would be caught in "crossfires" in front of this dispensary when the commissioner had not heard of that happening anywhere else in the city. The commissioner also pointed out that all banks have security, as well as many restaurants and bars. Link responded that there may have been a shooting incident involving a dispensary and a child, but it was just not reported, and he reiterated that the presence of security means the increased probability of crime, which would negatively impact the neighborhood. When the chairman asked if he had attended any community meetings related to the dispensary, Link responded: "I wasn't part of the one for the zoning change that was at the end of last year, but I did go to the [June 1] community meeting." He further testified that, even though he was at that meeting, "you don't retain counsel and have them start doing discovery, hiring expert witnesses, spending thousands and thousands of dollars,

until you know something is going to happen." He continued, stating that NAMD learned of the August meeting "two weeks ago" and then retained counsel. Finally, Alderman Knudsen testified as to the meetings, notice, and community engagement conducted over the prior two years related to MariGrow. The meeting then concluded.

¶ 14    On September 18, 2023, the Board approved MariGrow's application, finding that MariGrow satisfied all of the necessary criteria for a special use permit. In its written findings, and as relevant here, the Board addressed NAMD's request for a continuance. Specifically, the Board stated that MariGrow is a social equity cannabis applicant and had "undergone a lengthy process" to arrive at the Board in August, MariGrow held a community meeting the previous year for a zoning map amendment even though it was not legally required to do so, and MariGrow also engaged in meetings with Alderman Knudsen, the Wrightwood Community Association, and the Lincoln Park Chamber of Commerce. The Board found that "[a]ll proper notices were sent out," one officer of NAMD was present at the June 1 community meeting, and NAMD had knowledge "for quite some time" that MariGrow's application would come before the Board. The Board also noted that it was unclear whether any members of NAMD lived within 250 feet of the property and that counsel for NAMD declined to cross-examine any of MariGrow's witnesses. The Board concluded that "due process was afforded" to NAMD and "any hardship suffered by [NAMD] because of the denial [of the continuance] was created by [NAMD's] expectation that a continuance would be granted."

¶ 15    On October 20, 2023, NAMD filed a complaint for administrative review in the circuit court, alleging that the Board violated its due process rights by denying its request for a continuance and granting MariGrow's special use application over NAMD's objections.

¶ 16    On December 20, 2023, MariGrow filed a combined motion to dismiss NAMD's complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). In particular, MariGrow asserted that NAMD's complaint should be dismissed for failure to state a claim upon which relief could be granted and for lack of standing. A few months later, the Board also filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (*id.*), asserting substantially the same arguments.

¶ 17    On March 5, 2024, NAMD filed a memorandum of law in support of its complaint. On March 19, 2024, MariGrow filed a response. On April 2, 2024, NAMD filed a reply. MariGrow requested leave to file a surresponse, and NAMD subsequently requested leave to file a surreply. The court granted both requests.

¶ 18    On May 22, 2024, NAMD filed a motion for leave to file an amended complaint, seeking to add allegations of an equal protection violation. In particular, NAMD stated that "MariGrow's brief brought certain facts to the attention of [p]laintiff's counsel, namely the disparate treatment of applicant and objectors by the Board in violation of the equal protection clause of the 14th Amendment." See U.S. Const., amend. XIV. In the amended complaint attached to the motion, however, NAMD not only added an equal protection claim but also added allegations naming two members who owned property within 250 feet of the proposed dispensary and one member who would be specifically harmed by the special use permit. On May 28, 2024, the court denied NAMD's motion to amend its complaint.

¶ 19    On June 6, 2024, the court heard arguments from the parties on the motions to dismiss.

¶ 20    On June 27, 2024, the court entered a written order denying NAMD's complaint for administrative review and affirming the Board's decision. Specifically, the court found that

NAMD was not denied due process and had not demonstrated that it had standing to pursue the administrative review action.

¶ 21    On July 18, 2024, NAMD filed a motion to reconsider the circuit court's June 27, 2024, decision, as well as the court's denial of the motion for leave to amend NAMD's complaint. MariGrow filed a response, and NAMD filed a reply.

¶ 22    On September 11, 2024, the court denied NAMD's motion to reconsider. Of note, in the written order, the court pointed out that NAMD's request to reconsider the denial of the motion for leave to amend its complaint was untimely, as it should have been made within 30 days of the court's denial, which was entered May 28, 2024. Regardless, the court explained that the motion to amend was denied because it was untimely, calculated to cause delay, and was an attempt to add facts outside the record.

¶ 23    This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, NAMD argues that (1) the Board denied NAMD due process and equal protection when it denied its request for a continuance, (2) the circuit court abused its discretion in denying NAMD leave to amend its complaint, (3) NAMD has standing to seek administrative review of the Board's decision, and (4) the circuit court abused its discretion when it declined to remand this matter to the Board to further develop the record as to NAMD's standing.[1]

¶ 26    Briefly, we note that NAMD's statement of facts is rife with impermissible argument, such as claiming that the Board "harangued" and "berated" Link and held a "sham" hearing, and it also contains numerous statements that are not supported with citation to the record. This runs afoul of

___

[1]In its response brief, the Board only addresses the claim of standing but nonetheless adopts MariGrow's arguments as to the other issues raised on appeal.

our supreme court rules for appellate briefs. Rule 341(h)(6) provides that the statement of facts should be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). We admonish counsel to heed this rule in the future.

¶ 27                                         A. Standard of Review

¶ 28    Generally, on appeal from administrative review proceedings, this court reviews the agency's decision, not the circuit court's. *Village of Alsip v. Portincaso*, 2017 IL App (1st) 153167, ¶ 11. Here, however, we review the circuit court's dismissal of NAMD's complaint for administrative review. See *Rodriguez v. Sheriff's Merit Comm'n of Kane County*, 218 Ill. 2d 342, 357 (2006) (reviewing the circuit court's dismissal of the plaintiff's complaint for administrative review).

¶ 29    A motion to dismiss pursuant to section 2-619.1 of the Code allows a party to combine a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. 735 ILCS 5/2-615, 2-6-19, 2-619.1 (West 2022); *Grassroots Collaborative v. City of Chicago*, 2020 IL App (1st) 192099, ¶ 21. A section 2-615 motion challenges the sufficiency of the pleading, whereas a section 2-619 motion asserts that an affirmative matter outside the pleading defeats the causes of action raised therein. *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9. In reviewing a dismissal pursuant to either section 2-615 or 2-619 of the Code, we must accept all well-pleaded facts and any reasonable inferences arising therefrom as true. *In re Application for a Tax Deed*, 2021 IL 126150, ¶ 17. We review *de novo* the circuit court's dismissal on a section 2-619.1 motion, regardless of whether the dismissal was based on section 2-615 or section 2-619. *Kennedy v. City of Chicago*, 2022 IL App (1st) 210492, ¶ 16. Accordingly, we may affirm the court's judgment on any basis supported by the record, regardless of the court's reasoning. *Id.*

¶ 30                                      B. Standing

¶ 31     Because standing is a prerequisite to pursuing an administrative review action in the circuit court, we address that issue first.

¶ 32     NAMD argues that it has standing to bring its administrative review action because (1) there are members owning property within 250 feet of the proposed dispensary, and (2) NAMD had alleged a specific adverse effect and damages to its members from the special use permit. Notably, NAMD's standing argument consists of two conclusory paragraphs, citing only the statutory authority for standing and lacking citations to the record. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that an appellant's argument must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Failure to properly cite to the record may result in forfeiture of the argument. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12. Additionally, "[m]ere contentions, without argument or citation to authority, do not merit consideration on appeal." *Id.* The rules governing appellate briefs are rules, not mere suggestions, and we may strike a brief and dismiss the appeal for failure to comply with those rules. *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). However, because resolution of this issue is not difficult, we elect, in our discretion, to address the merits to the extent necessary for resolution of this appeal.

¶ 33     Under Illinois law, "it is the defendant's burden to plead and prove lack of standing." *International Union of Operating Engineers, Local 148, AFL-CIO v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 45 (2005). For a not-for-profit corporation to have standing to bring suit on behalf of its members, it is required, *inter alia*, that at least one member would otherwise have standing to pursue the action independently. *Id.* at 47 (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); 805 ILCS 105/103.10(b) (West

2022). "Where a plaintiff lacks standing, the proceedings must be dismissed because the lack of standing negates the plaintiff's cause of action." *Sierra Club v. Office of Mines & Minerals*, 2015 IL App (4th) 140405, ¶ 22. Lack of standing is a question of law which we review *de novo*. *International Union*, 215 Ill. 2d at 45.

¶ 34    "There is common-law standing, which requires an injury in fact to a legally recognized interest [citation], and there is statutory standing, which requires the fulfillment of statutory conditions to sue for legislatively created relief." *People v. Johnson*, 2021 IL 125738, ¶ 31. Relevant here, the zoning enabling statute expressly adopts the Administrative Review Law, which governs actions to judicially review agency final decisions. 65 ILCS 5/11-13-13 (West 2022); 735 ILCS 5/3-102 (West 2022). "Where it is adopted, the Administrative Review Law bars any other statutory, equitable, or common-law mode of review of decisions of administrative agencies." *Goral v. Dart*, 2020 IL 125085, ¶ 34; see *People ex rel. Naughton v. Swank*, 58 Ill. 2d 95, 102 (1974) (stating that the Administrative Review Law "was designed to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases").

¶ 35    The zoning enabling statute specifically codifies the standing requirements for administrative review of the Board's decision. See 65 ILCS 5/11-13-7 (West 2022). The statute provides, in pertinent part:

> "Any property owner within the above stated 250 feet notice requirement, who entered his or her appearance and objected at the board of appeals hearing, and who shows that his or her property will be substantially affected by the outcome of the decision of the board may, without proof of any specific, special, or unique damages to himself or herself or his or her property or any adverse effect upon his property from the proposed variation

or special use, seek judicial relief from any order or decision of the board of appeals under the Administrative Review Law ***." *Id.*

¶ 36 In interpreting statutory language, we must ascertain and give effect to the intent of the legislature. *Scott v. City of Chicago*, 2015 IL App (1st) 140570, ¶ 11. This means considering the plain language of the statute, and where clear and unambiguous, applying it "as written without resorting to other rules of statutory construction." *Id.* "We do not read in exceptions, conditions, or limitations that were not expressed by the legislature." *Id.* The plain and ordinary meaning of this section is that "a property owner within 250 feet, who entered an appearance, who objected at the board of appeals hearing, and who showed that his property would be substantially affected by the board's decision, may appeal the judgment of the board." *Podmajersky v. Zoning Board of Appeals of Chicago*, 131 Ill. App. 3d 1072, 1075 (1985).

¶ 37 Despite NAMD's general assertion that it has members owning property within 250 feet of the proposed dispensary, no such evidence is found in its complaint and counsel did not "have that exact information" at the August 18 hearing before the Board. Because NAMD did not identify any members owning property with 250 feet of the proposed dispensary at the hearing before the Board and did not allege any such members in its complaint filed in the circuit court, it simply cannot demonstrate standing under section 11-13-7. Although NAMD attempted to amend its complaint and name two qualifying members, the circuit court denied NAMD's motion to amend, and as we explain below, that decision was proper. Moreover, "[j]udicial review of administrative decisions is restricted to the record compiled by the agency, and no new or additional evidence shall be heard by the circuit court." *Baker v. Department of Employment Security*, 2014 IL App (1st) 123669, ¶ 23; 735 ILCS 5/3-110 (West 2022). NAMD also impermissibly attempted to add this evidence in its reply to MariGrow's motion to dismiss. In response, MariGrow asserted that

"the timing of [NAMD's] associational standing revelation makes clear it undertook a post-ZBA hearing membership drive." Regardless of how NAMD obtained this new evidence, it is *dehors* the record and cannot be considered.

¶ 38    Thus, the circuit court correctly determined that NAMD lacked standing to file a complaint for administrative review of the Board's decision.

¶ 39                          C. Due Process and Equal Protection

¶ 40    Notwithstanding our conclusion that NAMD did not have standing to seek administrative review, we also find that NAMD's claims that it was denied due process and equal protection when the Board denied NAMD's request for a continuance are without merit. As to due process, NAMD contends that the Board's denial of the continuance was arbitrary and capricious. As to equal protection, NAMD asserts that the Board treats applicants, such as MariGrow, and objectors, such as NAMD, differently without a rational basis for doing so.

¶ 41    We first address the issue of due process.

¶ 42    Like judicial proceedings, administrative proceedings are also required to follow the constitutional requirements of procedural due process. *Trettenero v. Police Pension Fund of Aurora*, 333 Ill. App. 3d 792, 798-99 (2002). The main tenets of procedural due process are meaningful notice and a meaningful opportunity to be heard. *Id.* at 799. "However, due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). Whether an administrative agency violated an individual's right to due process is reviewed *de novo*. *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 40.

¶ 43    In this case, it is undisputed that MariGrow and the Board complied with all statutory notice requirements. The Board stated in its findings of fact that proper notice was given prior to the August 18 hearing, and NAMD does not argue otherwise. Additionally, a member of NAMD admitted at the hearing that he was present at the June 1 community meeting, and counsel admitted that NAMD became aware of the meeting two weeks prior to the hearing date. Where there was compliance with the statutory requirements of notice, and NAMD had actual notice, it cannot be said that NAMD was deprived of adequate notice. See *Erickson v. Knox County Wind Farm LLC*, 2024 IL App (4th) 230726, ¶ 90. Instead, NAMD contends that the denial of its request for a continuance violated due process because it was not permitted sufficient time to prepare and present witnesses at the hearing, and therefore, it did not have a meaningful opportunity to be heard.

¶ 44    The right to be heard simply means that the party has an opportunity to present its position at the administrative proceeding. See *American National Bank & Trust Co. v. City of Chicago*, 209 Ill. App. 3d 96, 114 (1990). A review of the record shows that NAMD was given the opportunity to cross-examine MariGrow's witnesses and to present its own witnesses. In fact, NAMD presented its opposition to the special use application through its witness, Link. Additionally, the Board permitted NAMD's counsel ample time to argue in support of the continuance request. Nonetheless, NAMD argues that the only way it could have received a meaningful opportunity to be heard under these circumstances was by the allowance of a 60-day continuance.

¶ 45    Agencies have broad discretion in conducting administrative hearings, including the discretion to decide whether to allow a continuance. *Sheehan v. Board of Fire & Police Commissioners*, 158 Ill. App. 3d 275, 286 (1987); *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 911 (2003). However, this discretion must be exercised

judiciously and not arbitrarily, and "[a] continuance should not be denied where clearly it is required by the ends of justice." *Brown v. Air Pollution Control Board*, 37 Ill. 2d 450, 454 (1967).

¶ 46    NAMD contends that objectors, such as itself, "know little to nothing about the [special use permit] process *** or how ZBA hearings are conducted" and may not know that representation by counsel is necessary or that expert witnesses are needed. For this reason, NAMD asserts that it should have been given additional time to prepare for the hearing, especially where MariGrow had been allowed "significant time to prepare its case—far more time than [NAMD] requested."

¶ 47    However, NAMD's arguments overlook the most significant factor that led to the Board's denial: its representative at the hearing admitted that he was present at a previous community meeting two months earlier, signaling that NAMD's failure to adequately prepare could not be attributed to lack of notice or insufficient time. NAMD's decision not to retain counsel and begin preparing its opposition to the dispensary earlier does not render the Board's decision arbitrary. In conclusion, under these circumstances, justice did not require that the Board grant a continuance, and thus, we find that the Board's decision was not an abuse of discretion.

¶ 48    We now turn to the issue of equal protection. NAMD did not include a distinct claim for an equal protection violation in its complaint for administrative review, and the circuit court rejected its attempt to belatedly add that claim. We explain below why the court's denial of NAMD's motion to amend was proper. Because the equal protection claim was not alleged in the complaint, it is not properly before this court. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (issues not raised in the court below are deemed waived and may not be raised for the first time on appeal). Nonetheless, because the issue was mentioned in the briefing below, we briefly explain why this claim fails as well.

¶ 49    NAMD contends that the Board's denial of its request for a continuance was "inconsistent with its other decisions regarding continuances that same day." NAMD further contends that the Board routinely grants the continuance requests of applicants, such as MariGrow, but denied the only request made by an objector that day. In response, MariGrow asserts that "equal protection jurisprudence does not prohibit discretionary procedural rulings" and "[a] judge may deny a continuance in one case and grant it in another without triggering a constitutional violation." We agree with MariGrow.

¶ 50    "The equal protection clause guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat those individuals differently." *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 46. Where there is no fundamental right or suspect class involved, an agency may differentiate between people who are similarly situated if there is a rational basis for doing so. *Strauss v. City of Chicago*, 2021 IL App (1st) 191977, ¶ 45. Significantly, even where a differentiation passes constitutional muster, it may nonetheless result in some inequality in practice. See *id.* ¶ 46.

¶ 51    It is clear from the record that the Board's reasons for denying the continuance request were that MariGrow had conducted extensive community engagement for over a year and had several witnesses present and prepared to testify that day and NAMD failed to exercise due diligence in preparing for the hearing despite having constructive and actual advance notice. Contrary to NAMD's suggestion, the Board's decision was not based on NAMD's classification as an "objector." Thus, the equal protection clause is not implicated here, and there can be no violation.

¶ 52                    D. Denial of Amendment to Complaint

¶ 53    Next, NAMD argues that the circuit court abused its discretion in denying NAMD leave to amend its complaint.

¶ 54    Section 2-616(a) of the Code provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms." 735 ILCS 5/2-616(a) (West 2022). The right to amend, however, is not absolute or unlimited. *I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 219 (2010). The decision of whether to grant leave to amend a complaint rests within the sound discretion of the circuit court, and we will affirm absent an abuse of that discretion. *Id.* "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 35.

¶ 55    A court must consider the following factors in determining whether to grant leave to amend a pleading: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). "The party seeking leave to amend bears the burden of demonstrating that all four factors favor the relief requested." *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 36.

¶ 56    However, "[w]here it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied." *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 968 (1992). For this reason, the court may consider the merits of the claim in the proposed amended pleading. *I.C.S. Illinois*, 403 Ill. App. 3d at 220. As we have explained above, NAMD's equal protection claim is meritless, and thus, amendment of the complaint would not have altered the outcome in the circuit court.

¶ 57    Moreover, consideration of the *Loyola* factors demonstrates that the circuit court did not abuse its discretion.

¶ 58    As to the first factor, NAMD contends that "the proposed amendment was intended to cure the defects in the pleading with respect to standing." NAMD's amended complaint attempted to add new facts that two of its members owned property within 250 feet of the proposed dispensary. However, as we stated above, no new evidence can be submitted to the circuit court that was not part of the administrative record. Thus, although NAMD's amendment may have cured the pleading defects related to standing, it was not permitted to make such an amendment.

¶ 59    As to the second factor, the amendment may not have surprised MariGrow. NAMD stated in its motion that the new theory was actually brought to its attention through one of MariGrow's own filed pleadings. However, it would have prejudiced MariGrow, where briefing had already been completed on the motions to dismiss. Granting the amendment would cause a substantial delay to the proceedings for all parties to amend their briefs and would result in additional costs to the parties.

¶ 60    The third and fourth factors also weigh in favor of the denial of amendment. A court may deny a motion to amend if it was made "after an unreasonable length of time." *Loyola*, 146 Ill. 2d at 275. "The stage of litigation at which a proposed amendment is brought is certainly a relevant consideration." *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 525-26 (2007). Here, the proposed amendment was not timely, and NAMD concedes that it did not file its motion to amend on "the first possible day it could have done so." In particular, NAMD had more than six months to amend their complaint to add the equal protection claim and the parties had already submitted six briefs to the circuit court. There was no reason why NAMD had to wait until the extensive briefing was completed to request amendment. Nonetheless, NAMD contends that it did not seek to amend the

complaint sooner because of "extensive discussions" among counsel and members of NAMD that preceded the filing of the motion. We do not find that explanation persuasive.

¶ 61    Therefore, we find the circuit court's denial of NAMD's motion for leave to amend its complaint was not an abuse of discretion.

¶ 62                                                E. Remand

¶ 63    Finally, NAMD contends that the circuit court erred in denying NAMD's request for remand to the Board to develop the record as to standing.

¶ 64    Section 3-111 of the Administrative Review Law provides a list of the circuit court's powers in an administrative review action. 735 ILCS 5/3-111 (West 2022). Relevant here, subsection (7) states that, "where a hearing has been held by the agency," the circuit court has the power "to remand for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it shall appear that such action is just." *Id.* § 3-111(a)(7). The statute continues:

> "However, no remandment shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency and that it could not by the exercise of reasonable diligence have been obtained at such proceedings; and that such evidence is material to the issues and is not cumulative[.]" *Id.*

¶ 65    Whether to remand an action to the administrative agency "for the purpose of presenting new evidence is a matter of sound discretion of the circuit court." *Baker*, 2014 IL App (1st) 123669, ¶ 23; see *Caliendo v. Martin*, 250 Ill. App. 3d 409, 419 (1993) (same); *Board of Education of*

*Minooka Community Consolidated School District No. 201 v. Ingels*, 75 Ill. App. 3d 334, 337 (1979) (stating that the power to remand under the Administrative Review Law is discretionary).

¶ 66    Again, NAMD's brief contains cursory argument on this issue, citing a single case, *Appel v. Zoning Board of Appeals of the City of Mattoon*, 120 Ill. App. 2d 401 (1970), for support. See *supra* ¶ 32. In any case, *Appel* is not relevant here.

¶ 67    In that case, following a public hearing, at which the plaintiffs were present, the zoning board granted the defendants' conditional use petition. *Id.* at 402. The plaintiffs filed a complaint for administrative review in the circuit court, alleging that they were adversely affected by the decision. *Id.* The circuit court dismissed the complaint, and in an order denying the plaintiffs' posttrial motion, the court stated that the plaintiffs failed to present evidence in the circuit court that they had standing to pursue the action. *Id.* at 402-03. On appeal, the Fourth District of this court reversed and remanded. *Id.* at 406. In doing so, the court stated that an administrative proceeding is ineffective where the agency preserves no record, and thus, where the record is insufficient, the circuit court should remand to the agency. *Id.* at 404-05. The facts of the case before us are markedly different from those in *Appel*. Here, the administrative agency held a hearing and the transcript from that proceeding was preserved and introduced as an exhibit attached to NAMD's complaint. As such, *Appel* is inapposite.

¶ 68    Moreover, our review of the record demonstrates that NAMD did not exercise due diligence in obtaining the evidence necessary to prove the standing of its members to pursue an administrative action. Even disregarding that at least one of its members had knowledge of MariGrow's application well in advance of the August 2023 hearing, NAMD still had two weeks to determine if any of its members lived within 250 feet of the subject property and failed to obtain that information. NAMD also does not provide any reasonable excuse as to why the members'

addresses could not have been obtained sooner. It strains credulity to believe that the members' addresses were not a prerequisite for joining the organization. Thus, we reject this argument and find that the circuit court did not abuse its discretion in declining to remand the action to the Board. See *Baker*, 2014 IL App (1st) 123669, ¶ 27 (finding that the circuit court did not abuse its discretion in declining to remand where the plaintiff did not exercise due diligence in securing a witness's participation at the administrative hearing).

¶ 69                                    III. CONCLUSION

¶ 70    For the reasons stated, we affirm the judgment of the circuit court.

¶ 71    Affirmed.

*Neighbors Against a Marijuana Dispensary at 2573-81 Lincoln, Inc. v. Zoning Board of Appeals of Chicago*, 2026 IL App (1st) 241910

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CH-8934; the Hon. Thaddeus L. Wilson, Judge, presiding. |
| **Attorneys for Appellant:** | Eugene E. Murphy Jr., of Murphy Law Group, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Elizabeth Mary Tisher, Assistant Corporation Counsel, of counsel), for appellee Zoning Board of Appeals of the City of Chicago.<br><br>Ashley W. Brandt, James R. Shultz, and Daniel C. Curth, of Tucker Ellis LLP, of Chicago, for other appellee. |